IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| SHERRY POER, individually and as Administratrix of the Estate of Christopher Poer, Deceased,<br><br>             Plaintiff,<br><br> -against-<br><br>The City of Commerce City,<br>Sheriff Tim Norton in his official capacity,<br>Officers: Deputy Chris Dickey, and<br>Sergeant Travis Turner, both of whom are sued in their individual capacities,<br><br>             Defendants. | **FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff, SHERRY POER, individually and as administratrix of the estate of Christopher Poer, deceased, by her attorneys Fisher & Byriaslen, P.L.L.C. and for her complaint against the defendants alleges as follows:

**PRELIMINARY STATEMENT**

1. This civil rights action seeks redress under 42 U.S.C. § 1983, § 1988 and Colorado State law for injuries the Plaintiff and Christopher Poer, the deceased, suffered as a result of the

unconstitutional conduct of defendants: Sheriff Tim Norton in his official capacity, The City of Commerce City, and Officers: Deputy Chris Dickey, and Sergeant Travis Turner.

2.      On April 12, 2018, Christopher Poer was suffering from distress caused by his Post Traumatic Distress Syndrome, which he suffered as a result of his service as a decorated Green Beret for the United States Military in Iraq and Afghanistan.  Mr. Poer called the police in an attempt to get help.  Deputy Dickey and Sergeant Turner arrived at the scene and rushed at Mr. Poer without first having any conversation with him.  While Mr. Poer was lying on the ground and not resisting arrest, Turner hit Mr. Poer in his head and body; Dickey fired his Taser at Mr. Poer, and engaged the Taser's shock mechanism at least 2 times.  As a result of this force, Mr. Poer became incapacitated, lost consciousness, and was killed.

3.      Dickey has a history of very serious excessive force with the Commerce City Police Department, and the department failed to discipline or properly train him, and failed to put any permanent findings on his police record in regards to his serious abuses of citizens.

4.      Despite Commerce City's failures, there existed a substantial public record of Dickey's serious abuses of citizens in the from of public lawsuits and judgments, as well as in the news media.

5.      Despite this public record of Dickey's past transgressions, The Elbert County Sheriff's Office (through the prior Sheriff Heap) hired Dickey to be a Sheriff's Deputy which put him in a position of authority to commit the acts against Mr. Poer which caused his death.

6.      Plaintiff seeks redress for her substantial injuries and for the death of her deceased son, Christopher Poer, in the from of: (i) compensatory damages for Mr. Poer's wrongful death, and other financial loss caused by the illegal actions of the defendants; (ii) punitive damages to deter

such intentional or reckless deviations from well-settled constitutional law; and (iii) such other and further relief, including costs and attorney's fees, as this Court deems equitable and just.

## JURISDICTION

7. Jurisdiction is conferred upon this Court by 28 U.S.C. §§1331 and 1343(a)(3) and (4), as this action seeks redress for the violation of Plaintiff's constitutional and civil rights, pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988.

8. Supplemental jurisdiction is conferred upon this Court by 28 U.S.C. § 1367(a) over any and all state law claims that are so related to the federal claims that they form part of the same case or controversy.

## VENUE

9. Venue is proper in the United States District Court for the District of Colorado pursuant to 28 U.S.C. § 1391(b)(2), as this is the judicial district in which the events giving rise to Plaintiff's claims took place.

## JURY DEMAND

10. Plaintiff demands a trial by jury in this action on each and every one of her claims for which jury trial is legally available.

## THE PARTIES

11. Christopher Poer was a 46-year-old, United States Military decorated Green Beret veteran, resident of the State of Colorado, and a citizen of the United States who was killed on April 12, 2018.

12. Sherry Poer is a citizen of the United States and the State of Indiana, Christopher Poer's mother, and was at all times relevant to this complaint a resident of the State of Indiana.

13. Defendant Sheriff Tim Norton maintains the Elbert County Sheriff's Office ("ECSO") which is an agency of the County and authorized by law to maintain a police department, and does maintain the ESCO, which acts as its agent in the County in the area of law enforcement and for which it is ultimately responsible. Defendant Sheriff Tim Norton assumes the risks incidental to the maintenance of a police force and the employment of police officers.

14. The City of Commerce City has a police department, the ("CCPD"), which is an agency of the municipality and authorized by law to maintain a police department, and does maintain the CCPD, which acts as its agent of the City in the area of law enforcement and for which it is ultimately responsible. The City assumes the risks incidental to the maintenance of a police force and the employment of police officers.

15. At all times relevant herein, Defendant Dickey was an ECSO Deputy, and Defendant Turner was a Sergeant with the ESCO. Both officers unlawfully used excessive force against Christopher Poer resulting in his wrongful death.

16. At all times relevant herein, Defendant Officers Dickey and Turner acted under color of law in the course and scope of their duties and/or functions as agents, employees, and/or officers of the County and/or ECSO, and incidental to the lawful pursuit of their duties as agents, employees, and/or officers of the County and/or the ECSO.

17. At all times relevant herein, Defendant Officers Dickey and Turner violated clearly established rights and standards under the Fourth and Fourteenth Amendments of the United

States Constitution, of which a reasonable police officer in their circumstances would have known.

## STATEMENT OF FACTS

### The Incident

18. Christopher Poer was a veteran of the United States Military. In fact he was a decorated Green Beret who served in Iraq and Afghanistan, as a Staff Sergeant in the 5th Special Services Group.

19. On April 12, 2018, Mr. Poer was suffering from PTSD and called the police looking for help.

20. Defendants Dickey and Turner were dispatched to where Mr. Poer was in response to the call for help. The Officers were also told that Mr. Poer had a gun.

21. Upon arrival, the Defendants did not formulate a plan or attempt to communicate with Mr. Poer in any meaningful way.

22. The Defendants approached Mr. Poer and screamed "Get your fucking hands up motherfucker. Put your hands up or I will shoot you."

23. Mr. Poer was lying on the ground and, according to a witness, he was saying "I'm a Vet…I'm a Vet…I need help".

24. The Defendants then approached Mr. Poer. Turner hit Mr. Poer several times in the head and the body with a fist or with some other object, and this apparently rendered Mr. Poer unconscious.

25. Dickey then fired his taser at Mr. Poer, who was already unconscious, and fired at least 2 taser strikes.

26.     As a result of the force used by the Defendants Mr. Poer was rendered unconscious and died at the scene.

**Officer Dickey's Prior Excessive Force Encounters**

27.     Before Dickey was employed with the ECSO, he participated in many serious incidents of excessive force as an officer of the Commerce City Police Department ("CCPD"):

   A.  On April 1, 2013, Dickey yanked the driver of a semi-truck from the driver's seat. While the driver's hands were spread against the truck in the search position, Defendant Dickey struck the driver on the left side of his neck with a baton. The driver lost consciousness. CCPD "reviewed" the matter.  CCPD reviewers indicated that no further action be taken and that the officer acted reasonably.  No investigation was opened, Dickey was not questioned, no remedial training was ordered, and the CCPD officer (Defendant Dickey) was not disciplined.

   B.  On November 8, 2014, Dickey encountered a man who was suffering from a Diabetic Shock incident while driving.  Without first attempting to have a conversation with the man, Dickey pulled him out of his vehicle and threw him to the ground.  Dickey then hit the man in the leg with this baton.  Next, Dickey fired five taser strikes at the man for a total of 24 seconds.  The man suffered severe injuries including broken bones.  Dickey was not disciplined or retrained despite reviewing officers' concerns about his conduct in this case.  This incident ultimately resulted in a judgment against Commerce City in the amount of $350,001.00 plus attorney fees and costs.

   C.   On July 22, 2016, Officer Dickey was in a foot pursuit of a 16 year old child who was only wearing a pair of shorts.  Dickey was wearing a body worn camera.  As Dickey

5

rounded a corner in pursuit of the child he saw that his partner already had the child face down on the ground at gunpoint with his arms spread to his sides. Dickey then approached the child and can be heard on the body camera footage saying "oohh, let me tase him". Dickey then approached closer, holstered the taser, and pulled out his gun. Dickey then pressed the gun into the child's back. He pressed the gun so hard into the child's back that the gun "came out of battery" and it left a mark on the child's back which could still be seen hours later by other officers. Dickey then screamed at the child "show me your fucking hands". Dickey repeated this several times even though it is clear from the video that the child had already done so before Dickey even approached him.

        D.    Approximately two months before the incident with the child, Dickey had chased, arrested, and tased a man who was lawfully protesting on public property. Dickey's superiors on scene commanded that Dickey release the man without filing any charges. This case also resulted in a lawsuit against Commerce City.

**Commerce City's Failure to Train, Retrain, or Discipline**

28.    Dickey was not found to have violated any policies of the CCPD for any of the above behavior.

29.    This is despite the fact that several of these incidents were found to be of major concern by the use of force instructors who reviewed the incidents.

30.    Dickey was eventually told that some of these incidents would likely result in findings of excessive force and he would be terminated. CCPD purposely gave Dickey the option to resign in lieu of termination so that none of this would be put on his permanent record.

31. Dickey then chose to resign and was allowed to do so without any blemishes on his record at CCPD.

## ESCO Hired Dickey Despite His Record

32. After Dickey resigned from CCPD he applied for a job as an Elbert County Deputy Sheriff.

33. Dickey's prior excessive force complaints had been well documented in the news media in various articles, news programs, and in the filling of public lawsuits.

34. Despite this publicly available information, the ECSO hired Dickey to be a Sheriff's Deputy.

35. At the time of the hiring, the ECSO either knew, or should have known, about the serious prior allegations against Dickey.

## FIRST CAUSE OF ACTION

### Willful and Wanton Conduct Resulting in Wrongful Death

36. Plaintiff realleges and incorporates by reference each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

37. The acts of the Defendants, alleged herein, wrongfully caused the death of Mr. Poer.

38. The defendants were consciously aware that their acts and omissions created danger and risk to the safety and life of Mr. Poer.

39. The willful and wanton acts and deadly force outlined herein were the proximate cause of Mr. Poer's death.

40. As a direct and proximate result of the defendants' willful and wanton conduct causing wrongful death, Plaintiff is entitled to an award of general compensatory damages for her resulting ongoing grief, emotional distress, pain and suffering, and impairment of the quality of her life.

### SECOND CAUSE OF ACTION

### 42 U.S.C. § 1983 – Individual Defendant Officers' Violations of

### Plaintiff's FourthAmendment Right to Be Free From the Use of Excessive Force

41. Plaintiff realleges and incorporates by reference each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

42. In committing the acts and omissions complained of herein, Defendants Turner and Dickey acted under color of state law to deprive plaintiff of the right to be free from the use of excessive force.

43. As a direct and proximate result of Defendants' deprivation of Mr. Poer's constitutional rights, he suffered the injuries and damages set forth above.

44. The unlawful conduct of Defendants Turner and Dickey was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

### THIRD CAUSE OF ACTION

**42 U.S.C. § 1983 – Deliberately Indifferent Training, Remedial Training, and Failure to Discipline (Defendant Commerce City)**

45. Plaintiff hereby incorporates the foregoing paragraphs as if fully set forth herein.

46.     Defendant Commerce City knew or should have known that Plaintiff and other citizens had a Fourth Amendment right to be free from excessive force and wrongful death at the time of the complained of conduct as those rights were clearly established at that time.  In fact, Defendant Commerce City acknowledges that its policies and procedures in this regard have led to multiple similar instances of officer misconduct.  In fact, CCPD supervisors, officials, and/or commanding officers review uses of force and are aware of unreasonable and excessive force by CCPD officers.  Despite actual and/or constructive notice of unreasonable and excessive force by CCPD officers, CCPD supervisors, officials, and/or commanding officers' were deliberately indifferent in failing to train, provide remedial training, and disciplining its officers, resulting in additional constitutional violations.

47.     The deliberately indifferent acts and omissions of Defendant Commerce City, by its top level decision makers or delegated final decision makers, as described herein, were moving forces in the deprivation of Mr. Poer's constitutional rights and caused his damages.

48.     Defendant Commerce City was, at all times relevant, the policy and decision maker for the Commerce City Police Department through its designated final decision makers and delegated final decision makers, and, in that capacity, established training and/or supervision including monitoring, and sufficient discipline for the same, or through their delegated final policy and decision makers at the department.

49.     Defendant Commerce City, with actual and/or constructive knowledge of the obvious urgent need for constitutionally acceptable departmental policies and procedures concerning the training and discipline of officers; and the obvious likelihood of injury to citizens exposed to such officers, recklessly and with deliberate indifference, did not reasonably provide such

policies and procedures and failed to properly train, supervise, and discipline the Officer Defendants complained of above. These and other failures created the danger of harm led to Mr. Poer's death in this case.

50. As a direct and proximate result of CCPD supervisors, officials, and/or commanding officers' deliberately indifferent conduct, Mr. Poer was killed by the Defendants causing his damages, in amounts to be determined at trial.

**FOURTH CAUSE OF ACTION**

**42 U.S.C. § 1983 – Deliberately Indifferent Hiring, Training, Remedial Training, and Failure to Discipline (Defendant Sheriff Tim Norton)**

51. Plaintiff hereby incorporates the foregoing paragraphs as if fully set forth herein.

52. Defendant Sheriff Norton (through his predecessor Sheriff Heap) knew or should have known that Plaintiff and other citizens had a Fourth Amendment right to be free from excessive force and wrongful death at the time of the complained of conduct as they were clearly established laws at that time. In fact, Defendant Norton (through his predecessor Sheriff Heap) knew or should have known that its hiring policies and procedures in this regard would have had a substantial likelihood to lead to officer misconduct. In fact, the ECSO supervisors, officials, and/or commanding officers had actual and/or constructive notice of unreasonable and excessive force by Officer Dickey in the past. ESCO supervisors, officials, and/or commanding officers' were deliberately indifferent in failing to meaningfully vet its deputies during the hiring process, resulting in constitutional violations.

53. The deliberately indifferent acts and omissions of Defendant Norton (through his predecessor Sheriff Heap) and by its top level decision makers or delegated final decision

10

makers, as described herein, were moving forces in the deprivation of Mr. Poer's constitutional rights and caused him damages.

54. Defendant Norton (through his predecessor Sheriff Heap) was, at all times relevant, the policy and decision maker for the ECSO and, in that capacity, established hiring and retention protocols, that were likely to lead to constitutional violations by its officers.

55. Defendant Norton (through his predecessor Sheriff Heap), with actual and/or constructive knowledge of the obvious urgent need for constitutionally acceptable departmental policies and procedures concerning the hiring and retention of its officers; and the obvious likelihood of injury to citizens exposed to such officers, recklessly and with deliberate indifference, did not reasonably provide such policies and procedures and failed to properly vet and screen potential officer candidates as complained of above. These and other failures created the danger of harm led to Mr. Poer's death in this case.

56. As a direct and proximate result of ESCO supervisors, officials, and/or commanding officers' deliberately indifferent conduct, Mr. Poer was killed by the Defendants causing Plaintiff damages, in amounts to be determined at trial.

**FIFTH CAUSE OF ACTION**

**Gross of Wanton Negligence Against Individual Defendants**

57. Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

58. At all relevant times alleged herein, Defendants Dickey and Turner owed Mr. Poer a duty of care to use only the amount of force necessary to detain him and diffuse the situation.

59. Defendant Dickey breached this duty by shooting Plaintiff at least 2 times with a Taser, and Defendant Turner breached this same duty by hitting Plaintiff several times in the head and body.

60. Defendants Dickey and Turner acted with reckless indifference to the welfare of Plaintiff by shooting Plaintiff with a Taser and by hitting him several times in the head and body without first trying to talk to Plaintiff.

61. As a direct and proximate result of the grossly negligent actions of Defendants Turner and Dickey, Plaintiff lost consciousness, and subsequently died from the aforementioned injuries he sustained.

62. Defendant Norton, is responsible for the conduct of Defendants Dickey and Turner under the doctrine of *respondeat superior* due to the master-servant relationship which existed at the time of the incident, and which is the basis of this lawsuit.

63. Defendants Turner and Dickey had a duty to conduct themselves as reasonably prudent police officers following the standard operating procedures and training of the Elbert County Sheriff's Office.

64. Defendants Dickey and Turner had a duty to avoid applying physical force to Plaintiff without justification.

65. Defendants Dickey and Turner breached these duties by using a Taser against Plaintiff without justification, and hitting Plaintiff in the head and body.

66. As a result, Plaintiff suffered serious injuries and died.

## SIXTH CAUSE OF ACTION

### Assault

67. Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

68. The actions of Defendants Dickey and Turner as described above were without Mr. Poer's consent.

69. Defendants Dickey and Turner, without just cause, willfully and maliciously used physical force against Mr. Poer, causing him severe injury and, subsequently, his death.

70. Defendants Dickey and Turner committed the foregoing acts intentionally, willfully, and with malicious disregard for Mr. Poer' rights, and are therefore liable for punitive damages.

71. The actions of Defendants Dickey and Turner were unreasonable and unjustified under the circumstances.

72. Plaintiff is entitled to recover against Defendants Dickey and Turner under the common law of Colorado for her injuries and for Mr. Poer's injuries and death.

## SEVENTH CAUSE OF ACTION

### Battery

73. Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

74. Defendants' actions as described above were without Mr. Poer' consent.

75. The amount of force Defendants Dickey and Turner against Mr. Poer was excessive.

76. Defendants Dickey and Turner committed an intentional, willful, and malicious battery against Mr. Poer when they shot him with the Taser and hit him in the head and body.

77. Plaintiff is entitled to recover against Defendants Dickey and Turner under the common law of Colorado for Mr. Poer' injuries and losses.

## EIGHTH CAUSE OF ACTION

*Respondeat Superior*

78. Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

79. At all relevant times, Defendants Dickey and Turner were employees of the ECSO and were acting within the scope of their employment.

80. Defendant Sheriff Norton is therefore vicariously liable under the doctrine of r*espondeat superior* for the actions of defendants Dickey and Turner set forth herein.

## DEMAND FOR RELIEF

**WHEREFORE**, Plaintiff demands the following relief against the defendants, jointly and severally:

(a) compensatory damages in an amount just and reasonable and in conformity with the evidence at trial;

(b) punitive damages from defendants Dickey and Turner to the extent allowable by law;

(c) attorney's fees;

(d) the costs and disbursements of this action;

(e) interest; and

(f) such other and further relief as this Court deems just and proper.

Dated: Denver, Colorado

May 13, 2019

                                      Fisher & Byriaslen, PLLC
                                      By David N. Fisher, Esq.
                                      4900 S Syracuse St., 9th Floor
                                      Denver, CO 80237
                                      (303) 256-6345

                                      /s/ David N. Fisher