**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 19-cv-01088 (LTB)(NRN)

SHERRY POER, as Administratrix of the Estate of Christopher Poer, Deceased, and G.P. and
M.P. as Surviving Minor Children of Deceased

       Plaintiff,

v.

SHERIFF TIM NORTON, in his official capacity,
DEPUTY CHRIS DICKEY, and
SERGEANT TRAVIS TURNER, both of whom are sued in their individual capacities.

Defendants.

---

**PLAINTIFFS' MOTION TO PERMIT FURTHER DISCOVERY**
**PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 56(d) AND RESPONSE TO**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

---

       Pursuant to Federal Rule of Civil Procedure 56(d), Plaintiffs, through counsel, request

that this Court deny Defendants' Motion for Summary Judgment, or in the alternative, defer

consideration of the motion, set a discovery schedule, and allow time for discovery to conclude

before ruling on the Motion for Summary Judgment.  In support, Plaintiffs state as follows:

### **INTRODUCTION**

       Defendants Tim Norton, Chris Dickey and Travis Turner moved for summary judgment

on Plaintiffs' claims against them on May 22, 2020. [Doc. 53]. However, discovery has not even

begun in this matter.  Moreover, Plaintiffs have not yet deposed the Defendants, any other officer

present at the scene, and any other civilian witness present before and/or during the encounter in

question. Plaintiffs have not been able to obtain Rule 26 Disclosures, nor to propound interrogatories and/or document requests.

Plaintiffs assert in their Second Amended Complaint [Doc. 36] that on April 12, 2018, Christopher Poer was suffering from distress caused by his Post Traumatic Distress Syndrome, which he suffered as a result of his service as a decorated Green Beret for the United States Military in Iraq and Afghanistan. Mr. Poer called the police in an attempt to get help. Deputy Dickey and Sergeant Turner arrived at the scene and rushed at Mr. Poer without first having any conversation with him. While Mr. Poer was lying on the ground and not resisting arrest, Turner hit Mr. Poer in his head and body; Dickey fired his Taser at Mr. Poer and engaged the Taser's shock mechanism at least 2 times. As a result of this force, Mr. Poer became incapacitated, lost consciousness, and was killed.

Plaintiffs have obtained some "discovery" from the 18th Judicial District Crisis Response Team Investigation and Conclusions through open records requests. However, Plaintiffs should be permitted to engage in full discovery with the Defendants before any motion for summary judgment on Plaintiffs' claims are decided. Plaintiffs have not yet had the opportunity to fully (or even close to fully) explore critical material facts relating to liability by, among other things, conducting paper discovery and/or depositions.

For these reasons and those stated below as well as the reasons contained in the attached affidavits of David N. Fisher, counsel for Plaintiff, and Natasha Powers, expert investigator in the areas of police tactics and investigation and evidence collection, this Court should either deny the Motion for Summary Judgement or, in the alternative, defer consideration of the motion until after discovery has been conducted.

<u>**ARGUMENT**</u>

**A.      Standard for Obtaining a Continuance Under Fed. R. Civ. P. 56(d)**

Federal Rule of Civil Procedure 56(d) provides that, if the court does not deny the Motion

for Summary Judgement outright, it may defer considering the motion until after discovery has

occurred "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot

present facts essential to justify its opposition:":

> (d) When Facts Are Unavailable to the Nonmovant. If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> > (1) defer considering the motion or deny it;
> >
> > (2) allow time to obtain affidavits or declarations or to take discovery; or
> >
> > (3) issue any other appropriate order.

This Court has the option of simply denying the motion for summary judgement, thus rendering

the Rule 56(d) motion moot.  *See e.g. Cortez v. McCauley*, No. CV 02-1458 MCA/WDS, 2004

WL 7338158, at *5 (D.N.M. Mar. 17, 2004), *aff'd in part, rev'd in part,* 478 F.3d 1108 (10th Cir.

2007) (determining that the plaintiff's Rule 56(f) request was moot with respect to four

defendants because they were "not entitled to summary judgment based on the existing evidence

submitted with the parties' briefs," granting the request with respect to other defendants, i.e.,

denying those defendants' motions for partial summary judgment without prejudice pending

further discovery).

"Rule 56(d) is 'designed to safeguard against a premature or improvident grant of

summary judgment.'"[3] *United States ex rel. Polukoff v. St. Mark's Hosp.*, No. 2:16-CV-304-TS-

EJF, 2020 WL 1139141, at *1 (D. Utah Mar. 9, 2020).  Courts thus apply a liberal standard when

considering Rule 56(d) motions. *Campbell*, 962 F.2d at 1521-22 (stating that "unless dilatory or lacking in merit, the motion should be treated liberally"); *see also Seidel v. The Denver Athletic Club*, Case No. 15-cv-01336-RM-KMT, Doc. No. 30 - Opinion and Order (D. Colo. March 16, 2016) (Moore, J.).

### B. A premature grant of summary judgement is inappropriate in this case because discovery has not even commenced

There has never been a discovery schedule in this case. This case has been stayed pending this Court's ruling on the Rule 12(b)(6) motions and other related motions for sanctions. Under these circumstances, the next step is setting a discovery schedule, not taking up a motion for summary judgment. Cf. *Beyer Laser Ctr., LLC v. Polomsky*, No. 16-CV-03099-MEH, 2018 WL 3383135, at *2 (D. Colo. Mar. 15, 2018), in which Magistrate Hegarty granted the Rule 56(d) request, finding good cause for the counter-claimant's "inability to currently present facts supporting his counterclaims:" "Because of the five-month stay of discovery in [the] case, Dr. Polomsky has not had the opportunity to conduct written discovery or depose Counterclaim Defendants." *Ibid*. See also *Team Indus. Servs., Inc. v. Zurich Am. Ins. Co.*, No. 19-2710-JAR-KGG, 2020 WL 1233758, at *2 (D. Kan. Mar. 13, 2020)("*Zurich*") (granting Rule 56(d) request and denying the motion for summary judgement without prejudice). In *Zurich*, calling the defendants' motion "premature," *id*., at *2, the District Court explained circumstances that also apply here: "No scheduling conference has been set yet. This is not a case where discovery is merely incomplete; *discovery has not even commenced*." *Id*., *3. Accord, *Cortez v. McCauley*, No. CV 02-1458 MCA/WDS, 2004 WL 7338158, at *5 (D.N.M. Mar. 17, 2004), *aff'd in part, rev'd in part*, 478 F.3d 1108 (10th Cir. 2007) (denying motion for summary judgment and granting additional time for discovery, finding that because discovery had been stayed pending a

ruling on other defendants' claims of qualified immunity, Plaintiffs had been precluded from conducting the necessary discovery until after that stay was lifted.).

Rule 56(d) addresses fundamental concerns of fairness, as summary judgment should "be refused where the non-moving party has not had the opportunity to discover information that is essential to his opposition." *Anderson v. Liberty Lobby,* 477 U.S. 242, 250 n.5 (1986);[1] *Committee for the First Amendment v. Campbell*, 962 F.2d 1517, 1521-22 (10th Cir. 1992). "[S]ummary judgment may be inappropriate where the party opposing it shows under subdivision (f) that he cannot at the time present facts essential to justify his opposition." Fed. R. Civ. P. 56, Advisory Committee Notes to the 1963 Amendment. Continuances granted under Rule 56(d) are "designed to safeguard against a premature or improvident grant of summary judgment." *Pasternak v. Lear Petroleum Exploration, Inc*., 790 F.2d 828, 833 (10th Cir. 1986). "The purpose of 56(d) is to prevent 'railroading' the non-moving party through a premature motion for summary judgment before the non-moving party has had the opportunity to make full discovery." *Dickens v. Whole Foods Market Group, Inc.*, Civ. No. 01-1054, 2003 WL 21486821, at *2 n.5 (D.D.C. Mar. 18, 2003) (citations omitted).

Because of the general policy strongly favoring discovery of all relevant facts, in most cases, "denying the right to have full discovery on all pertinent issues before a summary judgment is granted would be error, particularly in the face of a Rule [56(d)] affidavit." *Miller v. U.S. Dep't of Transp*., 710 F.2d 656, 666 (10th Cir. 1983). "The Supreme Court has made clear that summary judgment is inappropriate unless a tribunal permits the parties adequate time for

---

[1] Many of the cases cited herein refer to Federal Rule of Civil Procedure 56(f). Due to an amendment to the Federal Rules of Civil Procedure, the substance of what was formerly Rule 56(f) is now contained in Rule 56(d). The cases analyzing the former Rule 56(f) are therefore applicable to this motion.

discovery." *Dunkin' Donuts of America v. Metallurgical Exoproducts Corp.,* 840 F.2d 917, 919 (Fed.Cir.1988)(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986)). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, ***after adequate time for discovery*** and upon motion, …." *Celotex Corp. v. Catrett,* 477 U.S. at 322.

The purpose of permitting additional discovery pursuant to subsection (d) of Rule 56 is to prevent the railroading of the non-moving party through a premature motion for summary judgment before the non-moving party has had the opportunity to make full discovery. *See Celotex Corp. v. Catrett, supra,* 477 U.S. at 326. That is what Defendants are attempting in this case. They are seeking summary judgment before a discovery schedule has been set and before discovery has even commenced.

This Court should deny the summary judgment motion because Plaintiffs have not had the opportunity to discover information that is essential to their opposition. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 n. 5 (1986) (Summary judgment should "be refused where the nonmoving party has not had the opportunity to discover information that is essential to [its] opposition."); See e.g., *Burnside-Ott Aviation Training Ctr., Inc. v. United States,* 985 F.2d 1574, 1582 (Fed. Cir. 1993) ("Because intent is relevant, the Claims Court erred in granting summary judgment on this issue without allowing adequate discovery. In other words, because of the trial court's error about intent, it cut short discovery. While this court encourages proper case management to avoid the expense of unnecessary discovery, the case demands adequate discovery."); *Liddiard v. Pederson*, No. 219CV00072JNPDBP, 2020 WL 2802030, at *8 (D. Utah May 28, 2020).

In *Liddiard v. Pederson, supra*, the defendants—instead of either filing a timely answer to the complaint or a motion under Rule 12 that would toll the time to answer—filed a motion for summary judgment soon after Liddiard filed his complaint.  One of Liddiard's attorneys filed a declaration under Rule 56(d) averring that discovery was needed to uncover evidence in opposition to the motion for summary judgment.  The District Court agreed:  "Because Liddiard has not yet had an opportunity to develop the factual record through discovery, the court agrees that a motion for summary judgment on the substantive due process claim is premature." *Liddiard v. Pederson*, *supra,* at *8.  "[S]ummary judgment [should] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Ibid,* quoting *Cerveny v. Aventis, Inc.*, 855 F.3d 1091, 1110 (10th Cir. 2017). These same considerations apply here.

A motion under Rule 56(d) must include an affidavit which "need not contain evidentiary facts" but which:

> must explain why facts precluding summary judgment cannot be presented. This includes identifying the probable facts not available and what steps have been taken to obtain these facts.  In this circuit, the nonmovant also must explain how additional time will enable him to rebut movant's allegations of no genuine issue of fact.

*Committee for the First Amendment v. Campbell*, 962 F.2d at 1522 (internal citations omitted).

### B.     Discovery is Necessary for Plaintiffs to Fully Respond to Defendants' Motion for Summary Judgment

As reflected in the attached Affidavits of David N. Fisher (**Exhibit 1**), counsel for Plaintiffs, and of Natasha Powers **(Exhibit 2)**, expert investigator in the areas of: use of force, police tactics and investigation and evidence collection, further discovery in many areas is

necessary before Plaintiffs can adequately respond to Defendants' Motion for Summary Judgment and the Court can fairly consider any of the issues posed in this motion. The areas where discovery is needed (as outlined more extensively in the attached affidavits) include, in very general terms, what Chris Dickey and Travis Turner knew about Mr. Poer when they arrived on the scene, and exactly what occurred during the use of force at issue in this case. Without having taken any depositions focused on Chris Dickey and Travis Turner's liability, Plaintiffs cannot adequately address all the substantive issues of material fact raised by Defendants Motion for Summary Judgment. Summary judgment "ordinarily 'is proper only after the plaintiff has been given adequate time for discovery.'" *Americable Int'l, Inc. v. Dep't of Navy*, 129 F.3d 1271, 1274 (D.C. Cir. 1997).

As set forth in the attached affidavits, Plaintiffs' counsel cannot fully respond to the Motion for Summary Judgment because at least the following discovery is still lacking:

1. Plaintiffs have not received the Elbert County Use of Force Policy to assess its application to the facts of this case.

2. Plaintiffs have not received the Elbert County Uniform and Equipment Policy or to assess its application to the facts of this case;

3. Plaintiffs have not been able to ascertain what records the medical examiner reviewed. Plaintiffs have not been permitted to depose the medical examiner nor to provide his own expert medical examiner with the full medical records and deposition transcripts to render her own opinion;

4.      Discovery is necessary to identify the timing and manner of the blow/s to Mr. Poer's head in relation to the timing of the tasing of him.  Obviously, tasing an unconscious person is not an authorized use of force;

5.      Without the full discovery and depositions under oath of the involved officers and other lay witnesses, it's impossible to ascertain how many times Sgt. Turner hit Mr. Poer in the head, and if all of those blows occurred before, during, or after Mr. Poer was tased, and to find out what Sgt. Turner used to strike Mr. Poer in the head;

6.      Plaintiffs have not yet had the opportunity to fully explore (among other things) what Dickey, and Turner knew about Mr. Poer at the time the event occurred and what the defendants actually did during their interaction with him;

In Exhibit 1 (Affidavit of David Fisher), affiant details some three dozen areas in which further discovery is needed in order to respond to the Motion for Summary Judgment.  All of those 36 paragraphs are incorporated here by reference.  Each is a compelling reason to permit discovery prior to ruling on the pending Motion for Summary Judgment.

Plaintiffs' Rule 56(d) motion is supported by good cause.  The attached Affidavit of David Fisher lays out in detail, paragraph by paragraph and allegation by allegation, why further discovery is needed before Plaintiffs are able to meaningfully respond to the Motion for Summary Judgement.  That Affidavit, as well as the Affidavit of expert Natasha Powers, are incorporated herein by reference.

**PRELIMINARY RESPONSE TO MOTION FOR SUMMARY JUDGMENT**

In their Motion for Summary Judgment, Defendants assert the following:

1. Plaintiffs cannot establish their claim for excessive force under the Fourth Amendment;

2. Defendants are entitled to Qualified Immunity;

3. Without a Constitutional violation there can be no municipal liability, and;

4. Plaintiffs cannot establish willful and wanton conduct on the part of the individual officers, and as a result his state law claim fails.

In order to properly respond to each of these arguments the Plaintiffs must be allowed to supplement the factual record so that they can present evidence to combat the narrative relied on by the defendants in their own self-serving recitation of the crucial events of this case. Nevertheless, Plaintiffs respond as follows, beginning with the proper standard for this Court's review:

This Court may grant summary judgment only if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of showing that there is an absence of evidence to support the nonmoving party's case. *Bacchus Indus., Inc. v. Arvin Indus., Inc*., 939 F.2d 887, 891 (10th Cir. 1991)). *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "A conclusory assertion that the plaintiff lacks evidence is insufficient, however, to secure summary judgment; the defendant must make some evidentiary showing that the plaintiff lacks competent evidence." *O'Farrell v. Bd. of Commissioners for Cty. of Bernalillo*, No. CIV 17-1052 JB\JFR, 2020 WL 1955292, at *13 (D.N.M. Apr. 23, 2020)("*O'Farrell*"). This Court must resolve all reasonable inferences and doubts in Plaintiffs' favor and construe all evidence in

the light most favorable to them. *See Hunt v. Cromartie*, 526 U.S. 541, 550-55 (1999); *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986)("*Liberty Lobby*") ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." (citation omitted)). This Court cannot decide any issues of credibility. *Ibid.* Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, at 251-252.

The movants in this case fail to meet their burden and will certainly be unable to do so after discovery is commenced and has been completed. Especially because discovery has not even commenced, this case is not "so one-sided" as to warrant a grant of summary judgment at this early stage.

## I. EXCESSIVE FORCE UNDER THE FOURTH AMENDMENT:

**Review of Defendants' Argument that Plaintiffs Cannot Establish their Claim for Excessive Force Under the Fourth Amendment is Premature Before Plaintiffs have had a Full and Fair Opportunity to Develop a Factual Record in the Case**

In order for a Court to rule on summary judgment regarding an excessive force claim under the Fourth Amendment the Court must delve into a very fact-sensitive analysis of the use of force encounter in question. In this case, such a fact sensitive inquiry cannot yet be undertaken given, among other things, that the Plaintiffs have not yet been able to:

    a. Depose the defendant officers to find out the exact timing and manner of the force applied, and exactly what they were doing and what Mr. Poer was doing during each aspect of the force encounter.

b. Depose the other officers present on the scene and/or the other lay witnesses present to find out the exact timing and manner of the force applied, and exactly what Mr. Poer was doing during each aspect of the force encounter.

c. Present this as yet undeveloped evidence to a police practices expert so that the Plaintiffs can present to the Court an expert opinion about the force used and its application as compared to best police practices as well as Elbert County's own Use of Force Policy.

d. Obtain the full medical record and coroner's report so that Plaintiffs can depose the coroner and provide their own expert report from their own medical expert regarding the manner and cause of death and the circumstances related to Mr. Poer's alleged preexisting health conditions and toxicology records to see what, if any, those conditions had to do with his death in this case.

e. Depose Sgt. Turner, Deputy Dickey, and all others present during the encounter, regarding the use of possible deadly force when Turner struck Mr. Poer with brass knuckles in order to figure out how many times he struck Mr. Poer with such deadly force and when he did so in relation to the application of the taser and in relation to when the gun was already recovered.

All of the above questions and concerns cannot be answered and fully developed until the Plaintiffs have been allowed to conduct discovery in this case. To do otherwise would allow the moving party to rely on its own recitation of the use of force encounter rather than relying on the facts in the light most favorable to the non-moving party as required in such a motion. *Hunt v. Cromartie*, *supra,* 526 U.S. at 550-55 (1999); *Liberty Lobby, supra*, 477 U.S. at 255.

Defendants cite *Wilson v. City of Lafayette*, Nos. 07–cv–01844–PAB–KLM, 07–cv–02248–PAB–BNB, 2010 WL 1380253, 2010 U.S. Dist. LEXIS 31442 (D. Colo. Mar. 31, 2010), *aff'd Wilson v. City of Lafayette*, 510 Fed. Appx. 775 (10th Cir. 2013), but fail to identify a key factor illuminating the court's ruling:  the fact that the incident occurred in 2006, prior to the time when case law began to emerge finding that use of a taser, especially on an already-apprehended suspect, can constitute excessive force in violation of the Fourth Amendment. *Wilson v. City of Lafayette*, 510 F. App'x at 777. This fact permeated the court's ruling, minimizing its application to this case.

Long before the officers struck Mr. Poer in the head repeatedly, tased him, and killed him, the Tenth Circuit and the vast majority of other Circuit Courts recognized the type of misconduct in this case -- striking blows to a person's head and tasering him when he is not resisting arrest -- constitutes excessive force. *Cavanaugh v. Woods Cross City*, 625 F.3d 661, 665 (10th Cir.2010) (tasing non-resistant suspect was excessive force); *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1282 (10th Cir.2007) (tasing a non-violent misdemeanant who was not offering any resistance was excessive force); *In re Estate of Booker*, 745 F.3d 405 (10th Cir. 2014)(the use of a Taser and 'carotid neck hold' were disproportionate to the need, where the plaintiff was already handcuffed and restrained); *Perea v. Baca*, 817 F.3d 1198, 1204-05 n.4 (10th Cir. 2016) (disproportionate use of a Taser against an already subdued individual is a constitutional violation); *O'Neal v. Bd. of Cty. Commissioners of Cty. of Fremont*, No. 16-CV-01005-TMT-KLM, 2020 WL 2526782, at *5 (D. Colo. May 18, 2020)(rejecting Defendants' argument that, at trial, Ms. O'Neal's evidence failed to establish that the use of force against her was objectively unreasonable; although Ms. O'Neal was actively resisting Defendants' efforts to

put her feet back into the chair restraints she had wriggled them out of, the circumstances suggest there was little need for those efforts in the first place because she was still restrained in the chair). See also *Brown v. City of Golden Valley*, 574 F.3d 491, 498–99 (8th Cir.2009) (tasing car passenger who was not attempting to flee or resist arrest was excessive force); *Brown v. Chapman*, No. 15-3506, 2016 WL 683260 (6th Cir. Feb. 19, 2016)(tasering a non-threatening suspect who was not actively resisting arrest constituted excessive force."); *Jones v. Treubig,* 963 F.3d 214 (2nd Cir. 2020) (use of force against an individual who was no longer resisting arrest constitutes excessive force)(plaintiff had been beaten with a baton, sprayed with pepper spray, and then tased);  *Oliver v. Fiorino*, 586 F.3d 898, 906–07 (11th Cir.2009) (tasing suspect ten times was excessive force because he stopped resisting after the first shock).  The reasonableness of the use of force "depends not only on whether the officers were in danger at the precise moment they used force but also on whether the officers' own conduct during the seizure unreasonably created the need to use such force." *Estate of Ceballos v. Husk*, 919 F.3d 1204, 1214 (10th Cir. 2019)(quoting and approving district court's ruling)(citing cases).

In evaluating whether the Fourth Amendment has been violated by the use of excessive force by an arresting officer, courts employ an "objective reasonableness" test, which requires consideration of the totality of the circumstances. *See Graham v. Connor*, 490 U.S. 386, 397 (1989).  Determining whether excessive force was used has been called an exercise in "slosh[ing] our way through the factbound morass of reasonableness." *Scott v. Harris,* 550 U.S. 372, 383 (2007).  Such motions involve critical factual issues. *See Scott,* 550 U.S. at 378 ("The first step in assessing the constitutionality of [an officer's] actions is to determine the relevant

facts."). It is premature and unfair to decide these fact-laden issues prior to discovery having even been commenced in this case.

## II. QUALIFIED IMMUNITY:

**While it is Clear that the Rights at Stake are Clearly-Established, Review of Defendants' Qualified Immunity Claim is Premature Before Plaintiffs have had a Full and Fair Opportunity to Develop a Factual Record in the Case**

Qualified immunity as raised in the Motion for Summary Judgment involves a two-step inquiry: (1) whether the facts **shown by the plaintiffs** make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct. The first prong is almost completely fact-dependent. While the U.S. Supreme Court does not regard it as mandatory that this Court consider prong (1) before prong (2) in all cases, the Court "continue[s] to recognize that it is often beneficial. For one thing, there are cases in which there would be little if any conservation of judicial resources to be had by beginning and ending with a discussion of the 'clearly established' prong." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)(holding the sequence is "often appropriate" but not mandatory). "'[I]t often may be difficult to decide whether a right is clearly established without deciding precisely what the existing constitutional right happens to be.'" *Ibid, quoting Lyons v. Xenia,* 417 F.3d 565, 581 (C.A.6 2005) (Sutton, J., concurring). In this case, this Court should not and cannot undertake the two-prong assessment prior to commencement and completion of discovery because without all the details of exactly what occurred, it is impossible for the Court to assess exactly what occurred during the highly fact sensitive encounter at issue.

With regard to the second prong -- whether a right is clearly-established -- once the facts are developed this Court will have no trouble rejecting the Defendants qualified immunity claim.

15

The Plaintiffs believe that the officers tased Mr. Poer after he was unconscious and hit Mr. Poer with Brass Knuckles in the head while Mr. Poer was not resisting arrest and complying with their commands. Additionally, the Plaintiffs will be able to demonstrate through discovery that the officers did not comply with best police practices and/or their own policies when they rushed into the use of force encounter without first formulating a plan and maintaining cover and distance and trying to de-escalate the situation, and also failed to timely render medical aid to Mr. Poer after he was rendered unconscious.

The Defendants suggest that qualified immunity applies because they are unaware of a Supreme Court or Tenth Circuit case finding a constitutional violation "to use a Taser and fists on a suspect that was wanted for commission of a felony with a dangerous weapon, refused orders from the police to show his hand, and struggled with officers trying to put him in handcuffs." (Doc. 53, p. 15). Defendants cite no case requiring this level of specificity. While it is true that too high a level of generality does not suffice, it is not true that a granular level of specificity is required. *See McCoy v. Meyers*, 887 F.3d 1034, 1052-53 (10th Cir. 2018) (concluding that there was clearly established law even though the three decisions invoked to satisfy that prong were not "factually identical to this case," because those cases "nevertheless made it clear that the use of force on effectively subdued individuals violates the Fourth Amendment"). To determine whether a right was clearly established, a court must consider whether the right was sufficiently clear that a reasonable government employee would understand that what he or she did would violate a right. *See Casey v. W. Las Vegas Indep. Sch. Dist.,* 473 F.3d 1323, 1327 (10th Cir. 2007). "A clearly established right is generally defined as a right so thoroughly developed and consistently recognized under the law of the jurisdiction as to

be 'indisputable' and 'unquestioned.' " *Lobozzo v. Colo. Dep't of Corr.*, 429 F. App'x 707, 710 (10th Cir. 2011)(unpublished) (*quoting Zweibon v. Mitchell*, 720 F.2d 162, 172-73 (D.C. Cir. 1983)).

Furthermore, Defendants' assertion that this case presents a situation where they "used a Taser and fists on a suspect that was wanted for commission of a felony with a dangerous weapon, refused orders from the police to show his hand, and struggled with officers trying to put him in handcuffs" is far from what the Plaintiffs believe the evidence shows and will show once discovery is complete. To the contrary, as pointed out in the attached affidavits, and will be further proved through discovery, Mr. Poer was not resisting arrest when he was hit in the head with brass knuckles and possibly tased while unconscious and the officers failed to render first aid for over 3 minutes after they applied such use of force methods.

The Defendants ask this Court to use only statements made by the officers in their police reports and conclusions drawn by an investigation of a CRT team as the relevant facts to decide whether constitutional violations have occurred. To use the defendants' own uncontested statements and the conclusions drawn by another arm of law enforcement would fly in the face of constitutional mandates afforded to a plaintiff in a section 1983 lawsuit. These motions are supposed to be decided in the light most favorable to the nonmoving party. *Hunt v. Cromartie, supra; Liberty Lobby, supra.* Plaintiffs have not even been granted the opportunity to conduct discovery and question the officers about their actions and to develop their own investigation and let their own experts opine on the facts as they develop. If the Court were to allow this motion to be decided now, before discovery has even commenced, it would be setting a dangerous precedent wherein police officer defendants could rely on their own self-serving statements to

defeat claims against them for excessive force and other related claims. As the records stands now, the Defendants are asking this Court to use their version of the facts as the truth and not allow the Plaintiffs a full and fair opportunity to develop essential facts that go to the very heart of the issues which would be necessary to determine the how the law applies to the very fact sensitive issues presented.

As the Tenth Circuit articulated in a 2018 decision finding that officers were not entitled to qualified immunity on arrestee's claim that they used excessive force when they struck him when he was handcuffed and not resisting:

> The Appellees faced a potentially dangerous situation before they subdued Mr. McCoy, whom they suspected of serious crimes and had perceived to be pointing a gun in their direction and reaching for Officer Burlie's handgun. But when the relevant conduct occurred, Mr. McCoy had already been rendered unconscious, handcuffed, and zip-tied, and—although he was regaining consciousness—was no longer resisting. The Appellees also had sufficient time to recognize the change in circumstances and the diminished need for force after Mr. McCoy was subdued. The previously dangerous situation faced by the Appellees therefore does not justify their post-restraint use of force.

*McCoy v. Meyers*, 887 F.3d 1034, 1051–52 (10th Cir. 2018). The Tenth Circuit cites *Cavanaugh v. Woods Cross City*, 625 F.3d 661, 666 (10th Cir. 2010) (concluding that while "our role is not to second guess on-the-ground decisions with the benefit of 20/20 hindsight[,] ... [i]t is not objectively reasonable to ignore specific facts as they develop (which contradict the need for [a particular] amount of force), in favor of prior general information about a suspect"). In addition to the cases cited in *McCoy v. Meyers*, Plaintiffs refer this Court to *Estate of Ceballos v. Husk*, 919 F.3d 1204, 1214 (10th Cir. 2019)("*Estate of Ceballos II*") and a case it relies upon, *Allen v.*

*Muskogee*, 119 F.3d 837, 839-41 (10th Cir. 1997). In *Estate of Ceballos II*, the Tenth Circuit

described the facts in *Allen v. Muskogee* as follows:

> There, Terry Allen "left his home after an altercation with his wife and children," taking ammunition and several guns with him. [*Allen v. Muskogee, supra,* 119 F.3d at 839]. Officers were told that Allen "was armed and had threatened family members," and that there was an eleven-year-old outstanding warrant for his arrest. *Id.* Allen drove to his sister's home and parked his car out front; she called police to report that Allen was "threatening suicide." *Id.* Three officers arrived to find that "Mr. Allen was sitting in the driver's seat with one foot out of the vehicle. He had a gun in his right hand, which was resting on the console between the seats." *Id.* Lieutenant Smith "approached the bystanders who were standing near Mr. Allen's vehicle, and ordered them to step back, which they did." *Id.*

> As Lt. Smith repeatedly told Mr. Allen to drop his gun, Officer Bentley McDonald arrived and joined Lt. Smith at the driver's side door. Lt. Smith then reached into the vehicle and attempted to seize Mr. Allen's gun, while Officer Bentley held Mr. Allen's left arm. Officer Bryan Farmer, who arrived with Officer Bentley, approached Mr. Allen's car from the passenger side, and attempted to open a passenger side door. Mr. Allen reacted by pointing the gun toward Officer Farmer, who ducked and moved behind the car. Mr. Allen then swung the gun toward Lt. Smith and Officer McDonald, and shots were exchanged. Lt. Smith and Officer McDonald fired a total of twelve rounds into the vehicle, striking Mr. Allen four times. The entire sequence, from the time Lt. Smith arrived to the time Mr. Allen was killed, lasted approximately ninety seconds.

> *Id.*

*Estate of Ceballos II, supra,* 919 F.3d at 1214. The facts in *Estate of Ceballos II* are outlined in

great detail, *id.*, 919 F.3d at 1209-1211; rather than repeat them all here, Plaintiffs incorporate

them by reference and note some of the salient facts that apply to this case:

- Ceballos's wife called 911 reporting her husband was in the driveway of their home holding two baseball bats, "acting crazy," and that Ceballos was drunk and probably on drugs;

- The dispatcher also indicated that Ceballos "is known to have knives."

- Two men at the scene told officers that Ceballos was not acting right and might be on drugs.

- Ceballos ignored the officers' orders to drop the bat and instead cursed them and waved the bat and his arms in the air;

- When Ceballos then walked towards officers with the bat, they tased and shot him with a gun, killing him.

*Ibid.* Plaintiffs also refer this Court to the detailed recitation in the district court's ruling denying the defendants' motion for summary judgement. *Estate of Ceballos v. Husk*, No. 15-CV-01783-RPM, 2017 WL 2377118, at *5 (D. Colo. June 1, 2017)("*Estate of Ceballos I*"), *aff'd in part, appeal dismissed in part, Estate of Ceballos II, supra*. The District Court ruled that the law was clearly established prior to the August, 2013 killing of Mr. Ceballos:

> The applicable law was clearly established by the time of this event. The Tenth Circuit has held that *Allen* and *Sevier* 'clearly establish that an officer acts unreasonably when he aggressively confronts an armed and suicidal/emotionally disturbed individual without gaining additional information or by approaching him in a threatening manner (i.e., running and screaming at him)." *Hastings*, 252 Fed. Appx. at 204–06. These cases provided Officer Husk with the requisite fair warning that his conduct in this case, assuming Plaintiffs' version of the facts, was unlawful.
>
> Officer Husk is therefore not entitled to summary judgment based on qualified immunity.

*Estate of Ceballos I, supra,* 2017 WL 2377118, at *5, *citing Allen v. Muskogee, Okl., supra; Hastings v. Barnes*, 252 Fed. Appx. 197, 203 (10th Cir. 2007) (unpublished)(affirming district court's denial of the officers' motion for summary judgment when they arrived on the scene with an emotionally disturbed man wielding a sword, failed to use de-escalation techniques, and shot and killed him); and *Sevier v. City of Lawrence, Kan.*, 60 F.3d 695, 699 (10th Cir. 1995)(affirming the district court's denial of summary judgment where officers were called to

the home of a man with a mental disturbance who wielded a knife and within four minutes and 21 seconds, they had shot and killed him).

When discovery is complete, this Court will have no trouble rejecting the Defendants' claim about excessive force under the Fourth Amendment and their qualified immunity claim. *O'Farrell v. Bd. of Commissioners for Cty. of Bernalillo*, No. CIV 17-1052 JB\JFR, 2020 WL 1955292 (D.N.M. Apr. 23, 2020) (ruling that the correctional officer was not entitled to qualified immunity, because using a Taser against a compliant, non-resisting detainee violated clearly established law); *Cavanaugh v. Woods Cross City*, 625 F.3d 661, 665 (10th Cir.2010) (tasing non-resistant suspect was excessive force).

The Defendants again cite *Wilson v. City of Lafayette*, *supra,* but as noted above, the incident in *Wilson* occurred in 2006. *Wilson v. City of Lafayette*, 510 F. App'x at 777. By 2018, when the officers killed Mr. Poer, it was clearly established that striking blows to a person's head and tasering him when he is not resisting arrest constitutes excessive force. *Cavanaugh v. Woods Cross City*, *supra;* (tasing non-resistant suspect was excessive force); *Oliver v. Fiorino*, *supra*; *Brown v. City of Golden Valley*, *supra*; and *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1282 (10th Cir.2007) (tasing a non-violent misdemeanant who was not offering any resistance was excessive force); *Brown v. Chapman*, No. 15-3506, 2016 WL 683260 (6th Cir. Feb. 19, 2016)(right was clearly established by December 31, 2010); *Jones v. Treubig, supra* (under clearly established law in April 2015, a law enforcement officer could not use significant force against an individual who was no longer resisting arrest). The Tenth Circuit has recognized that "it was clearly established law in this Circuit, as of December 2013, that disproportionate use of a Taser against an already subdued individual is a constitutional violation." *O'Neal v. Bd. of Cty.*

*Commissioners of Cty. of Fremont*, No. 16-CV-01005-TMT-KLM, 2020 WL 2526782, at *5 (D. Colo. May 18, 2020), citing *Perea v. Baca*, 817 F.3d 1198, 1204-05 n.4 (10th Cir. 2016).

As outlined above, once the facts are fully developed, this Court will have no trouble rejecting Defendants' qualified immunity arguments. *O'Farrell v. Bd. of Commissioners for Cty. of Bernalillo*, *supra* (ruling that the correctional officer was not entitled to qualified immunity, because using a Taser against a compliant, non-resisting detainee violated clearly established law).

### III.  MUNICIPAL LIABILITY:

**For the Same Reasons Set Forth in Issues I and II Above, Review of Defendants' Motion to Dismiss the *Monell* Claim is Premature Before Plaintiffs have had a Full and Fair Opportunity to Develop a Factual Record in the Case.**

Cross-referencing their argument as to Issue II (qualified immunity claim), Defendants set forth the unremarkable proposition that if there was no underlying constitutional violation by the officer(s), there can be no claim for municipal liability. (Doc. 53, p. 16). See *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (Because Petitioners (City of Los Angeles, et al.) "were sued only because they were thought legally responsible for [the officer's] actions[,] if the [officer] inflicted no constitutional injury on [the plaintiff], it is inconceivable that petitioners could be liable to [the plaintiff]."

The Summary Judgment Motion on this Claim is wholly dependent upon this Court's resolution of the issues of excessive force and the defendants' claim of qualified immunity, which are both fact-intensive issues that cannot be resolved prior to discovery.  As explained above, Plaintiffs have not yet had an opportunity to present evidence related to their claims of a constitutional violation.  Therefore, this argument is not yet ripe and should be rejected.

# IV. STATE LAW CLAIMS:

**The Second Amended Complaint more than Satisfies the Threshold Requirement by Setting forth Facts Sufficient to Support a Reasonable Inference that Defendants' Acts were Willful and Wanton and in all Respects, Review of Defendants' Argument is Premature Before Plaintiffs have had a Full and Fair Opportunity to Develop a Factual Record in the Case**

The Defendants argue that Plaintiffs' state law claim fails because the Complaint does not sufficiently allege willful and wanton conduct on the part of the individual officers and because  when the facts are in, Plaintiffs will not be able to prove their allegations. (Doc. 53, pp. 16-18). This Court should reject both of Defendants' arguments.

At the outset, Plaintiffs observe that Defendants' allegations are not well-founded.  The Second Amended Complaint ("SAC") more than satisfies the threshold requirement: the SAC "more than merely assert[s]" that Defendants' acts and omissions were willful or wanton; the SAC also "'set[s] forth specific facts to support a reasonable inference' the employee was consciously aware that his or her acts or omissions created danger or risk to the safety of others, and that he or she acted, or failed to act, without regard to the danger or risk." *Gray v. Univ. of Colorado Hosp. Auth.*, 2012 COA 113, ¶ 40, 284 P.3d 191, 198-199.  See e.g. SAC, ¶¶ 20-26, 39-43, 60-78.  Plaintiffs more than adequately set forth facts sufficient to support an inference of willful and wanton conduct, which is all that is required.  *Gray, supra*.

In *Gray, supra,* cited by Defendants (Doc. 53, p. 17), the Colorado Court of Appeals ruled against the defendant-doctor and reversed the trial court's dismissal of the claims: "we conclude that the trial court erred when it concluded that the factual allegations were not sufficiently specific to support a reasonable inference that the doctor was consciously aware that his acts or omissions created danger or risk to the patient's safety, and that he acted, or failed to

act, without regard to the danger or risk." *Id.*, ¶ 45, 284 P.3d at 200. Because the doctor's "acts

or omissions are alleged to have been willful and wanton, the doctor does not enjoy immunity

from suit as long as there are disputed issues of fact. [*City of Lakewood v. Brace*, 919 P.2d 231,

245-246 (Colo. 1996)]. Here, the complaint's allegations are sufficient to raise such a dispute."

*Id.*, ¶ 48, 284 P.3d 191, 200.[2]

Because Plaintiffs have sufficiently pleaded the state law claim, resolution of this claim is

inappropriate at this early stage of the litigation, before discovery has even commenced:

> the legislature did not intend an individual defendant's immunity from tort suits, although
> derived from sovereign immunity, to have the same initially preclusive effect from suit.
> This is reflected in the "willful and wanton" standard which mandates a fact-based
> determination. Such a determination is not susceptible to resolution at an early stage in
> the litigation process before significant discovery has been undertaken unless there are no
> disputed issues of fact. Moreover, a "willful and wanton" determination potentially
> requires the weighing of testimony and evidence, functions which are usually in the
> province of the jury/trier of fact and not the trial court. Accordingly, on remand, the trial
> court need not address further the individual defendants' qualified immunity on Brace's
> tort law claims. A well pled claim that an employee acted willfully and wantonly must
> await determination at trial on the merits.

*City of Lakewood v. Brace*, 919 P.2d 231, 246 (Colo. 1996).

Defendants cite three cases decided on the facts, following discovery, at the summary

judgment phase of the case, where the plaintiff lost on the facts: *Wilson, supra*, and *Lord v. Hall*,

No. 10–cv–02695–PAB–KLM (D. Colo. July 31, 2012), and *Sisneros v. Office of Pueblo Cty.*

*Sheriff*, No. 09-CV-01646-PAB-MJW, 2011 WL 882618, at *6 (D. Colo. Mar. 10,

2011)("*Sisneros*"), aff'd, 466 F. App'x 755 (10th Cir. 2012). These cases support the

---

[2] Defendants also cite *Lord v. Hall*, 520 Fed. Appx. 687 (10th Cir. 2013) (Doc. 53, p. 17), but that case was decided
on the facts of the case, following discovery. This case does not concern the argument Defendants' make in Doc.
53, which challenges the specificity in the Second Amended Complaint. Likewise, Defendants' citation to the two-
sentence ruling in the defamation case, *Drake v. City & Cnty. of Denver*, 953 F.Supp. 1150 (D. Colo. 1997) is
unavailing. (See Doc. 53, p. 17). That is not an excessive force case -- it is an employment
discrimination/defamation case -- and it contains no details about what was or was not alleged in the Complaint.

unremarkable proposition that if the facts produced at the summary judgment stage (following discovery) do not show that the officer's actions were objectively unreasonable, those same facts will generally also fail to survive a motion for summary judgment on the state law claims. See *Sisneros*, 2011 WL 882618, at *6 ("Here, plaintiff has not shown that [the police officer's] conduct was objectively unreasonable and, therefore, [the officer] is entitled to summary judgment on plaintiff's state law claim as well.")

Once the record has been developed through discovery, there will be ample evidence of Defendants' willful and wanton conduct. As laid out above and in the attached affidavits, Plaintiffs believe the record will show that the defendants: failed to form a tactical plan in order to peacefully de-escalate the situation and render aid to Mr. Poer; rushed at Mr. Poer in contravention to best police practices and their own training; struck Mr. Poer in the head with a deadly weapon rendering him unconscious, and tased him after he was unconscious; and failed to begin life-saving procedures for over three minutes after Mr. Poer was knocked unconscious. If the record is developed as laid out above, this Court (and a jury) could certainly conclude that the Defendants' actions and inactions were willful and wanton, and thus Plaintiffs should prevail on their state law claims.

## **CONCLUSION**

For the reasons presented in this Motion and the attached Affidavits of David N. Fisher and Natasha Powers, Plaintiffs respectfully request that this Court issue an Order either denying Defendants' Motion for Summary Judgment, or in the alternative, granting Plaintiffs' Motion to Permit Discovery Pursuant to Federal Rule of Civil Procedure 56(d) by deferring its ruling until

after the discovery cut-off has passed and Plaintiffs have had an opportunity to prepare and

timely file a response to the Motion for Summary Judgment.

Respectfully submitted this 3rd of August, 2020.

*/s/ David N. Fisher*
David N. Fisher, Esq.
Fisher & Byrialsen, PLLC
*Attorneys for Plaintiffs*
4600 S. Syracuse St., 9th Floor
Denver, Colorado 80237
T: (303) 256-6345
E: David@fblaw.org

## CERTIFICATE OF SERVICE (CM/ECF)

I HEREBY CERTIFY that on the 3rd day of August, 2020, I electronically filed the foregoing **MOTION/RESPONSE** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Gillian Dale
Mark S. Ratner
Hall & Evans, L.L.C.
1001 17th Street, Suite 300
Denver, CO 80202
Phone: 303-628-3300
daleg@hallevans.com
ratnerm@hallevans.com

*/s/ David N. Fisher*
David N. Fisher, Esq.
Fisher & Byrialsen, PLLC
*Attorneys for Plaintiff*
4600 S. Syracuse St., 9th Floor
Denver, Colorado 80237
T: (303) 256-6345
E: David@fblaw.org