Transcript of the Deposition Testimony of:

# Joshua Bjork
## August 2, 2021

Sherry Poer

v.

Sheriff Tim Norton, et al.

Civil No. 19-cv-01088



14143 Denver West Parkway, Suite 100 • Golden, Colorado 80401
(303) 202-0210 • contact@milehighreporting.com
www.milehighreporting.com

Deposition of:  Joshua Bjork - August 2, 2021
Sherry Poer v. Sheriff Tim Norton, et al.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-01088(LTB)(NRN)
_____

VIDEOCONFERENCE DEPOSITION OF JOSHUA BJORK
August 2, 2021
_____

SHERRY POER, as Administratrix of the Estate of
CHRISTOPHER POER, Deceased, and G.P. and M.P. as
Surviving Minor Children of Deceased,

Plaintiffs,

vs.

SHERIFF TIM NORTON in his official capacity,
DEPUTY CHRIS DICKEY, and SERGEANT TRAVIS TURNER, both
of whom are sued in their individual capacities.

Defendants.
_____

        PURSUANT TO NOTICE, the remote deposition of

JOSHUA BJORK, called for examination by the Plaintiff

herein, was taken with all parties appearing remotely

due to COVID-19 restrictions, commencing at 9:01 a.m.,

on August 2, 2021, before Valorie S. Huddleston, a

Registered Professional Reporter and Notary Public in

and for the State of Colorado.

Deposition of:  Joshua Bjork - August 2, 2021
Sherry Poer v. Sheriff Tim Norton, et al.

2

1    APPEARANCES:

2

ON BEHALF OF THE PLAINTIFF:
3            DAVID N. FISHER, ESQ.
             Fisher & Byrialsen, PLLC
4            4600 South Syracuse Street, Ninth Floor
             Denver, CO  80237
5            303-256-6345
             david@fblaw.org
6
ON BEHALF OF THE DEFENDANTS:
7            MARK S. RATNER, ESQ.
             Hall & Evans, LLC
8            1001 Seventeenth Street, Suite 300
             Denver, CO  80202
9            303-628-3337
             ratnerm@hallevans.com
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Deposition of:  Joshua Bjork - August 2, 2021
Sherry Poer v. Sheriff Tim Norton, et al.

3

1                              INDEX

2    EXAMINATION:                                    PAGE

3    BY MR. FISHER                                      4

4    BY MR. RATNER                                     --
     _____
5

6    EXHIBITS:

7         (None marked.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Deposition of:  Joshua Bjork - August 2, 2021
Sherry Poer v. Sheriff Tim Norton, et al.

**4**

1      P R O C E E D I N G S
2      * * * * * * * * * * * * *
3      JOSHUA BJORK,
4  being first duly sworn to state the truth, was examined
5  and testified further as follows:
6      EXAMINATION
7  BY MR. FISHER:
8      Q.  Deputy Bjork, good morning to you, sir.
9      A.  Good morning.
10      Q.  My name is David Fisher.  You and I have
11  never met before, have we?
12      A.  No, we have not.
13      Q.  So you are a defendant -- I'm sorry, you're a
14  witness in this lawsuit.  Have you ever been sued
15  before?
16      A.  No, I have not.
17      Q.  Have you ever been in a deposition before?
18      A.  No, I have not.
19      Q.  So I'm just going to explain to you briefly
20  some rules about a deposition.  I'm going to ask you a
21  bunch of questions.  Okay?
22      A.  Uh-huh.
23      Q.  And instead of saying "uh-huh" or nodding
24  heads, just make sure you answer verbally.  Okay?
25      A.  Yes, sir.

**5**

1      Q.  So the court reporter can take everything
2  down; is that understood?
3      A.  Yes, sir.
4      Q.  As best you can, it's tough over Zoom, but
5  just wait for me to finish my question before you give
6  your answer.  Okay?
7      A.  Yes, sir.
8      Q.  And you're -- the attorney here, Mr. Ratner,
9  may occasionally object to certain questions I ask.  Do
10  you understand that?
11      A.  Yes, sir.
12      Q.  When he does, just let him get his objection
13  on the record, and then you can proceed to answer the
14  question unless he directs you not to answer the
15  question.  Is that understood?
16      A.  Yes, sir.
17      Q.  Other than that, you understand that the oath
18  you're taking is the same oath that you would take in a
19  court of law.  Do you understand that?
20      A.  Yes, sir.
21      Q.  I assume you have testified in court before?
22      A.  Yes, sir.
23      Q.  How many times approximately?  Dozens of
24  times or --
25      A.  Three or four.

**6**

1      Q.  Okay.  I'll also be referring to this case as
2  either "the case" or "the incident," and by that I'll
3  be referring to the day that Mr. Poer was killed when
4  you guys were taking him into custody in Elbert County.
5  You understand that, right?
6      A.  Yes, sir.
7      Q.  Okay.  So let's see.
8      MR. RATNER:  I'm going to object -- to the
9  extent I can, I'm going to object to that description.
10      MR. FISHER:  Okay.
11      MR. RATNER:  It implies that the Defendants
12  killed Mr. Poer.  And that's not the case.
13      Q.  (By Mr. Fisher)  Okay.  So let's talk about
14  the incident.  You arrived on the scene after having a
15  call for service, correct?
16      A.  Yes, sir.
17      Q.  And when you got there, Deputy Dickey was
18  already there?
19      A.  Yes, sir.
20      Q.  Tell me about what was your rank at the time,
21  what was Deputy Dickey's rank, and what was the rank of
22  Sergeant Turner at the time?
23      A.  Deputy Dickey was a deputy, just like me,
24  although he had more time in service and more
25  experience than I did.  Sergeant Turner was the acting

**7**

1  sergeant on duty that day.
2      Q.  So when you arrived at the scene, and
3  Sergeant Turner is the sergeant and you and Deputy
4  Dickey are both deputies, who is in charge there out of
5  the three of you?
6      A.  Sergeant Turner would have been.
7      Q.  And why is that?
8      A.  He's the highest ranking.
9      Q.  Okay.  So if Sergeant Turner told you to do
10  something that day, and Deputy Dickey told you to do
11  something else, you would listen to Sergeant Turner I
12  take it, right?
13      A.  Yes.
14      Q.  Because he's in control of the three of you,
15  and he's in control of that scene, correct?
16      A.  Yes.
17      MR. RATNER:  Object to form.
18      Q.  (By Mr. Fisher)  So you arrived there.  What
19  did you understand was going on when you arrived there?
20      A.  I understand that we had an individual out in
21  a field near some houses firing off rounds, unsure of
22  what his intentions were.
23      Q.  Did you actually hear any rounds fired off?
24      A.  Not when I arrived on scene.
25      Q.  Did you ever hear any rounds fired off that

Deposition of: Joshua Bjork - August 2, 2021
Sherry Poer v. Sheriff Tim Norton, et al.

8

1  day -- or evening?
2     A.  Not that day, no.  I didn't hear any.
3     Q.  You just heard other people say that rounds
4  were fired off, correct?
5     A.  Dispatch advised that several people had
6  called in.
7     Q.  And when you arrived on scene, Deputy Dickey
8  had an idea where this individual, Mr. Poer, was,
9  correct?
10    MR. RATNER:  Object to form and foundation.
11    Q.  (By Mr. Fisher)  You can answer, sir.
12    A.  I had a general idea of where he was.
13    Q.  Right.  You knew in which vicinity he was,
14  correct, general direction?
15    MR. RATNER:  Same objection.
16    Q.  (By Mr. Fisher)  Did you hear me, sir?  A
17  general direction, I said.
18    A.  Yeah, a general direction.
19    Q.  Now, this was a rural part of the county or
20  rural part of the world frankly, right?
21    MR. RATNER:  Object to form and foundation.
22    Q.  (By Mr. Fisher)  Do you know what I mean by
23  rural?
24    A.  Can you explain, please?
25    Q.  So it was not a densely populated area.  It's

9

1  a very sparsely populated area, correct?
2     A.  Yes.
3     Q.  There's very few people around in that area.
4  The houses are very far apart, correct?
5     A.  Yes.
6     MR. RATNER:  Object to form and foundation.
7     Q.  (By Mr. Fisher)  It's sort of the opposite of
8  a big city, correct?
9     A.  Yes.
10    Q.  And Mr. Poer was in an open field at the time
11  when you arrived, correct?
12    A.  Yes.
13    Q.  And in that area, all the houses are pretty
14  far apart from each other?
15    MR. RATNER:  Object to form.
16    Q.  (By Mr. Fisher)  You can answer, sir.
17    A.  They were -- they were kind of far apart.
18  There were still houses nearby, though.
19    Q.  (By Mr. Fisher)  How many acres are each of
20  those houses on, do you know?
21    A.  Unknown.
22    MR. RATNER:  Object to form.
23    Q.  (By Mr. Fisher)  What's that?
24    A.  Unknown.  I have no idea.
25    Q.  Would you say at least 5 acres?

10

1     MR. RATNER:  Object to form and foundation.
2     MR. FISHER:  What is the objection to that
3  question?
4     MR. RATNER:  Well, you just established that
5  he doesn't know, so he doesn't have a foundation -- you
6  haven't established a foundational knowledge with
7  respect to how it is he knows what the acreage is.  Now
8  you're asking him about specific acreage, so I'm
9  objecting to foundation.
10    MR. RATNER:  All right.
11    Q.  (By Mr. Fisher)  So as I was saying, would
12  you say it was about 5 acres, more or less?  What do
13  you think?
14    A.  I wouldn't --
15    MR. RATNER:  Same objection.
16    Q.  (By Mr. Fisher)  What's that, sir?
17    A.  I would not know.
18    Q.  Okay.  In any event, Mr. Poer was in an open
19  field.  He was not near any other people at the time
20  when you arrived or at all that evening, besides law
21  enforcement, correct?
22    MR. RATNER:  Object to foundation.
23    A.  There were no individuals out at that time
24  besides law enforcement.
25    Q.  (By Mr. Fisher)  Okay.  It's not like it was

11

1  a hostage situation or anything like that, correct?
2     A.  Correct.
3     Q.  When you arrived there on the scene,
4  eventually you all formulated a plan that you were
5  going to approach Mr. Poer, correct?
6     MR. RATNER:  Object to form.
7     A.  Yes, sir.
8     Q.  (By Mr. Fisher)  And whose idea was that?
9     A.  Sergeant Turner's.
10    Q.  Was it Sergeant Turner's or was it Deputy
11  Dickey's?
12    MR. RATNER:  Object to form, argumentative.
13    A.  I honestly don't recall who formulated the
14  exact plan.
15    Q.  (By Mr. Fisher)  Okay.  Do you remember --
16  have you seen the body cam footage?
17    A.  No, I haven't.
18    Q.  Never?
19    A.  Never.
20    Q.  Oh, okay.  Well, I'll represent to you -- we
21  can watch this part of it if you want, if you don't
22  remember.  But I'll represent to you in the body cam
23  footage, Deputy Dickey first suggests -- well, let's
24  back up.  I'll start this question again.
25       Do you recall that when you all first

Deposition of:  Joshua Bjork - August 2, 2021
Sherry Poer v. Sheriff Tim Norton, et al.

12

1    arrived, Sergeant Turner said -- he advised nobody to
2    go near Mr. Poer until he arrived with his shield, a
3    ballistic shield?
4        A.  I do not recall him saying that.
5        Q.  Do you remember him coming up to you guys and
6    saying, you know, "My ballistic shield was in another
7    car, I don't actually have it, so we don't have one to
8    use"?  Do you recall that?
9        A.  I do recall that.
10       Q.  Okay.  And then at that point, Deputy Dickey
11   said, "Well, we can use the police truck and we can use
12   that as a shield, and we can approach him in the field
13   that way."  Do you recall?
14       A.  I do recall that.
15       Q.  And do you recall Sergeant Turner at that
16   point said, "I don't really want to approach a guy who
17   might shoot at us."  Do you remember that?
18       A.  I do not remember that.
19       MR. RATNER:  Object to form.
20       Q.  (By Mr. Fisher)  Did anyone -- yourself,
21   Deputy Dickey, or Sergeant Turner -- ever discuss
22   instead of approaching him in the field to try to get
23   him on the phone or to use the PA system of the police
24   vehicle to try to talk to him?
25       A.  No.

13

1        Q.  Did anyone actually try to talk to him, other
2    than when you all approached him and got really close?
3        A.  No.
4        Q.  So you did all -- you did eventually approach
5    him using the truck for cover, correct?
6        A.  Yes.
7        Q.  And let's talk about when you approached him.
8    Do you recall -- do you recall Sergeant Turner spotting
9    him first?
10       A.  I do.
11       Q.  And he started yelling things to the effect
12   of, "Put your fuckin' hands up," "I will fuckin' shoot
13   you," "Put your fuckin' hands up," and cursing and
14   screaming like that?
15       A.  Yes.
16       Q.  Now, what were you saying at the time?
17       A.  I recall saying, "Show me your hands."  I
18   don't remember if I cursed or not.
19       Q.  Okay.  There was a point that you started
20   approaching him, Mr. Poer, and eventually you were able
21   to get his fire -- get the firearm from him, correct?
22       MR. RATNER:  Object to form.
23       A.  After -- after us arriving on scene and
24   seeing Mr. Poer and attempting to apprehend him, I did
25   find a firearm.

14

1        Q.  (By Mr. Fisher)  And you found the firearm.
2    It wasn't on his person when you found it, correct?
3        A.  Correct.
4        Q.  It was lying over by his feet?
5        A.  I believe so.
6        Q.  And you picked up that firearm, and you put
7    it in your -- you secured it in your waistband,
8    correct?
9        A.  Yes, I did.
10       Q.  And actually Deputy Dickey said, "There's the
11   gun, grab it, grab it," and you grabbed it and put it
12   in your waistband, correct?
13       A.  Yes, I did.
14       Q.  And that was before Mr. Poer had been TASED,
15   correct?
16       A.  Yes, it was.
17       Q.  So you secured the firearm before Mr. Poer
18   had been TASED, and you also secured the firearm before
19   Mr. Poer had been hit in the head several times by
20   Sergeant Turner, correct?
21       MR. RATNER:  Object to form.
22       A.  I don't recall when Sergeant Turner started
23   punching.
24       Q.  (By Mr. Fisher)  Okay.  So you think Sergeant
25   Turner may have punched him in the head either before

15

1    or after you secured the gun?
2        MR. RATNER:  Object to form.
3        A.  I cannot recall if he was doing if before or
4    after, due to the confusion of the situation and being
5    told about the gun.
6        Q.  (By Mr. Fisher)  And being what?
7        A.  And being told about the gun.
8        Q.  What do you mean told about the gun?
9        A.  When Deputy Dickey said, "The gun's there,
10   grab it," so...
11       Q.  Okay.  So you know for sure that you secured
12   the gun and put it in your waistband before he was
13   TASED, correct?
14       A.  Yes.
15       Q.  But you're not sure if the gun was secured by
16   you before or after Turner punched him in the head,
17   right?
18       MR. RATNER:  Object to form.
19       A.  I do not recall that.
20       Q.  (By Mr. Fisher)  Okay.  I'm going to show you
21   that part of the video and see if we can figure it out
22   here.  Okay?
23       So this will be the first time you've ever
24   seen this video?
25       A.  Yes.

Deposition of:  Joshua Bjork - August 2, 2021
Sherry Poer v. Sheriff Tim Norton, et al.

**16**

1    **MR. RATNER:** What video are we talking about,
2    David?
3        **MR. FISHER:** The body cam.
4        **MR. RATNER:** Well, which body cam?
5        **MR. FISHER:** There's only one body cam.
6        **MR. RATNER:** Okay.
7        **Q. (By Mr. Fisher)** Are you aware of more than
8    one body cam, Mr. Bjork?
9        A.  I am not aware of more than one body cam
10    video.
11        Q.  Okay.  Were you wearing a body cam on the day
12    of the incident?
13        A.  No, I wasn't.
14        Q.  Do you know who was?
15        A.  Deputy Dickey.
16        Q.  Was it his own personal body cam?
17        A.  I do not know.
18        Q.  Does -- or at the time, did the sheriff's
19    department supply body cams for officers?  Do they now?
20        A.  To my knowledge, no, they didn't.
21        Q.  Do they now?
22        A.  Currently, to my knowledge, no, they don't.
23        Q.  Okay.  So how did Deputy Dickey happen to
24    have one?
25        **MR. RATNER:** Object to foundation.

**17**

1        A.  I don't know.
2        Q. (By Mr. Fisher)  Did you know that he had it?
3        A.  Yes, I did.
4        Q.  After the incident or before the incident?
5    When did you find out he had one?
6        A.  Before.
7        Q.  And how did you know that?
8        A.  He was one of my field training officers.
9        Q.  Okay.  So he told you about it or showed you
10    how to activate it or told you he had it?
11        A.  He let me know that he always wore a body
12    camera.
13        Q.  Okay.  Hold on a sec.  Okay?
14        A.  Yes, sir.
15        Q.  All right.  I'm going to try to share my
16    screen here.
17            (Video playing.)
18        Q. (By Mr. Fisher)  Are you able to see and hear
19    that?
20        A.  Yes.
21        Q.  Okay.  I'm going to try to skip around to the
22    part where you get the gun and where the tasing is
23    happening and all that so you can try to refresh your
24    recollection about when the blows to the head occurred.
25    Okay?

**18**

1        A.  Okay.
2        Q.  Okay.  So I'm going to stop it at 11:17.  You
3    just heard Sergeant Turner yelling, "There he is right
4    there" and "Put your hands up, Mother Fucker, I'm going
5    to shoot you."  Do you hear that?
6        A.  Yes.
7        Q.  All right.  We're going to keep going.
8            So I'm going to stop it there at 11:44.  You
9    can see you guys are approaching him and there's a
10    light on him, right?
11        A.  Yes.
12        Q.  Okay.  I'm going to keep playing.
13            (Video playing.)
14        Q. (By Mr. Fisher)  So do you hear, "There's the
15    gun"?
16        A.  Yes.
17        Q.  Okay.  At this point, had Sergeant Turner hit
18    Mr. Poer in the head yet?
19        A.  No.
20        Q.  Okay.  I'm going to keep playing it.
21            (Video playing.)
22        Q. (By Mr. Fisher)  Okay.  You hear the tasing
23    starting to commence now, right?  I stopped the video
24    at 12:18 for the record.  Do you hear the tasing
25    starting to commence?

**19**

1        A.  Yes.
2        Q.  So you had already had the gun secured in
3    your waistband at this point, correct?
4        A.  Yes.
5        Q.  At this point, had Sergeant Turner hit
6    Mr. Poer in the head yet?
7        A.  I believe he had struck him once.
8        Q.  Okay.  So you believe he struck him once
9    before the tasing?
10        A.  No, after the tasing.  Or, no.  Yeah, you're
11    right, before the tasing.  Sorry.
12        Q.  So once before the tasing.  And then also
13    after the tasing?
14        A.  I believe he struck him after the tasing too.
15        Q.  How many times would you say he struck him?
16        A.  Unknown.
17        Q.  Okay.  In your recorded interview with CRT,
18    you said three times.  Does that ring a bell?
19        A.  I believe approximately three times, yes.
20        Q.  Okay.  Sergeant Turner in his recorded
21    interview said five blows to the head or face area.  Do
22    you think that's possible?
23        A.  Yes, sir.
24        Q.  Okay.  I mean, I guess you weren't counting
25    at the time or writing it down, I imagine.

Deposition of:  Joshua Bjork - August 2, 2021
Sherry Poer v. Sheriff Tim Norton, et al.

---

**20**

1    A.  No, I wasn't.
2    Q.  All right.  I'm going to keep playing the
3  video here for a second and start it back up at 12:18.
4       (Video playing.)
5    Q.  (By Mr. Fisher)  Did you hear that?  We can
6  hear electricity from the TASER, correct?
7    A.  Yes.
8    Q.  And then I can also hear a ratcheting of a
9  handcuff.  Do you hear that?
10    A.  Yes, that was my handcuffs.
11    Q.  So you were putting one of the handcuffs on
12  one of Mr. Poer's arms or wrists at the time?
13    A.  Yes, sir.
14    Q.  Would that have been his right wrist?
15    A.  Yes, sir.
16    Q.  And what was going on with his left hand at
17  the time?
18    A.  It was still underneath his body at the time.
19    Q.  And when you heard Deputy Dickey say "move
20  your knee," was he talking to you?
21    A.  Yes, sir.
22    Q.  And where had your knee been?
23    A.  It was in the middle of his back at the time.
24    Q.  In the middle of whose back?
25    A.  Mr. Poer's.

---

**21**

1    Q.  And why was your knee in the middle of his
2  back?
3    A.  I've been trained to place my knee in the
4  middle of the back to prevent an individual from
5  standing up while I'm attempting to cuff.
6    Q.  Okay.  So you were attempting to cuff him.
7  You had your knee -- just one knee in his back?
8    A.  Yes, just one.
9    Q.  And at the same time you were cuffing his
10  right wrist?
11    A.  I was trying to get his arm out from
12  underneath him at the time prior to the tasing.
13    Q.  Okay.  And was he laying on his belly,
14  Mr. Poer, at this time?
15    A.  He was laying on his belly facedown.
16    Q.  So in the prone position, correct?
17    A.  Yes.
18    Q.  And you had one knee on his back, and you
19  were trying to get his hands cuffed at that time,
20  correct?
21    A.  Yes.  I was trying to pull his right arm out
22  from underneath him.
23    Q.  And you eventually did that, correct?
24    A.  Yes.
25    Q.  And you got the right arm cuffed during the

---

**22**

1  tasing, it sounds like, correct?
2    A.  Yes, but he was still resisting at that time.
3    Q.  By still resisting, you mean he was not
4  giving you his left hand?
5    A.  He was still trying to pull his right hand
6  back underneath him.
7    Q.  Even after it was cuffed you're saying?
8    A.  Yes.
9    Q.  How much do you and did you weigh at the
10  time?
11    A.  I probably weighed 205 pounds at the time.
12    Q.  And about the same now?
13    A.  About the same now, yes.
14    Q.  And I guess so you had your knee on his back
15  when he was in the prone position, placing obviously
16  some of your weight onto his back at that point,
17  correct?
18    A.  Yes.
19    Q.  And you were doing that on purpose to try to
20  make sure he doesn't try to get up off the ground,
21  correct?
22    A.  Yes.
23    Q.  So the purpose is to get your weight onto his
24  lower back area so that he cannot get up, correct?
25    A.  So that way he can't fight me, yes.

---

**23**

1    Q.  Is it possible that your weight was making it
2  either difficult or impossible for him to get his hands
3  out from underneath his belly?
4    MR. RATNER:  Object to foundation.
5    A.  I wouldn't know.
6    Q.  (By Mr. Fisher)  Okay.  You were there.
7  You're just saying you don't know what he could or
8  couldn't do because you're not him?  Why are you saying
9  you don't know?
10    A.  I have no idea what his capabilities are as
11  an individual, what kind of training he's had.  I don't
12  know who I'm dealing with, so I don't know what he was
13  capable of.
14    Q.  Okay.  I mean you -- never mind.  Withdrawn.
15  I'm going to keep playing for a second here
16  at 12:21.
17       (Video playing.)
18    Q.  (By Mr. Fisher)  You could hear Sergeant
19  Turner saying, "You got that hand, you got that hand,"
20  and you saying "yes," correct?
21    A.  Yes.
22    Q.  And that's when you had cuffed his right
23  hand, right?
24    A.  Yes, I had.
25    Q.  And we can still hear the charge of

---

Deposition of:  Joshua Bjork - August 2, 2021
Sherry Poer v. Sheriff Tim Norton, et al.

24

1    electricity in the video at this point at 12:26,
2    correct?
3        A.  Yes.
4        Q.  I'll keep playing.
5            (Video playing.)
6        Q.  (By Mr. Fisher)  At that point in the video
7    we just played, you can hear some heavy breathing from
8    Deputy Dickey, and you can also hear Sergeant Turner
9    saying, "Give me this fuckin' hand now.  Give it to me.
10   Give me this fuckin' hand."  Was he hitting Mr. Poer at
11   this point?
12       A.  I don't know as I was concentrated on getting
13   cuffs on him.
14       Q.  Okay.  So it's like you weren't looking in
15   that direction or --
16       A.  I wasn't -- I wasn't watching what Sergeant
17   Turner was doing as I was in the process of cuffing,
18   and I was more concentrated on where my cuffs were and
19   trying to get those cuffs on Mr. Poer at the time.
20       Q.  Okay.  You did see Sergeant Turner strike Mr.
21   Poer several times, right?
22       A.  Yes, I did.
23       Q.  But at this particular point in time when
24   we're playing the video right here, you're not sure
25   what Sergeant Turner was doing physically because

25

1    you're looking at the handcuffs?
2        A.  Yes.
3        Q.  Okay.  Sergeant Turner said in his deposition
4    and in his videotaped interview or audio-taped
5    interview with CRT that he stomped Mr. Poer in the back
6    as well.  Did you witness that?
7        A.  I did not witness that.
8        Q.  Okay.  Besides yourself putting your weight
9    on Mr. Poer's back, did any other officers do that as
10   well?
11       A.  I don't recall.
12       Q.  So it may or may not have happened, but you
13   don't have a memory either way?
14       A.  Yes.
15       Q.  I'm going to keep playing here for a little
16   bit.
17           (Video playing.)
18       Q.  (By Mr. Fisher)  So then we can hear you
19   saying, "Goddamn handcuff," and then Deputy Dickey
20   saying, "It's okay.  You got it?"  And then we hear
21   another ratchet, and then you hear on the mic, on the
22   radio, Sergeant Turner saying, "We got one detained,"
23   right?
24       A.  Yes.
25       Q.  So that was you getting the second cuff on?

26

1        A.  At that point, yes.
2        Q.  Why did you say "Goddamn handcuff"?  What was
3    going on there?
4        A.  At the time, I wasn't able to get it around
5    his wrist due to positioning, and the cuff wasn't
6    closing.
7        Q.  What allowed you to eventually get his second
8    hand cuffed or second wrist cuffed?
9        A.  I shifted his --
10           MR. RATNER:  Object to form and foundation.
11       A.  I --
12       Q.  (By Mr. Fisher)  Go ahead.
13       A.  I shifted his wrist.
14       Q.  Okay.  Did he stop, quote/unquote, fighting
15   at some point or stop resisting at some point?
16       A.  After the cuffs were on is when he stopped
17   fighting us and stopped resisting.
18       Q.  How did you get that second hand?
19       A.  I don't recall entirely.
20       Q.  Okay.  Sergeant Turner said in the body cam
21   and also in his deposition that he believes he knocked
22   Mr. Poer unconscious.  Do you recall that?
23       A.  I cannot attest to anything Sergeant Turner
24   said.
25       Q.  Not that he said it.  Do you know -- do you

27

1    recall whether or not Sergeant Turner actually knocked
2    Mr. Poer unconscious at some point?
3        A.  I do not know if he knocked Mr. Poer
4    unconscious at some point.
5        Q.  Did you see Mr. Poer become unconscious at
6    some point?
7        A.  As I was behind him, I could not see his
8    face, so I could not tell if he was unconscious or not.
9        Q.  Eventually did you notice he was unconscious?
10       A.  Yes.
11       Q.  And when did you first notice that?
12       A.  After Deputy Dickey had told me to get the
13   cuffs off of him.
14       Q.  Okay.  So it wasn't after -- you're talking
15   about after he's already been detained, a little while
16   passed, and then Deputy Dickey noticed he was having
17   trouble breathing or not moving, and then he asked you
18   to get the cuffs off, right?
19       A.  Yes.
20       Q.  But actually during the time when you're
21   cuffing and all that, you didn't notice him become
22   unconscious?
23       A.  No, I did not.
24       Q.  Okay.  Just give me a sec here.
25           At some point, is it correct that you lost

Deposition of:  Joshua Bjork - August 2, 2021
Sherry Poer v. Sheriff Tim Norton, et al.

28

1    the gun?
2        A.  Yes.
3        Q.  How did that occur?
4        A.  I do not know when or how I lost it.
5        Q.  You said in your interview with CRT that you
6    believe it fell out of your waistband when you were
7    getting Mr. Poer into the flatbed of the truck.  Do you
8    think that's correct?
9        A.  Yes.
10       Q.  So that would have been after he was already
11   unconscious and you guys were trying to get him some
12   medical help, correct?
13       A.  Yes.
14       Q.  Now, going back to when you got the gun and
15   put it in your waistband, you were only aware of there
16   being one gun -- one firearm, one gun, correct?
17       A.  Being taken from the residence, yes.
18       Q.  Okay.  Nobody made any reports to dispatch or
19   anybody else that there was more than one gun, correct?
20       A.  No.
21       Q.  And that one gun was secured by you before
22   the tasing, correct?
23       A.  Yes.
24       Q.  And that one gun was secured by you before
25   some of the blows to the head were administered by

29

1    Turner, correct?
2        A.  Yes.
3        Q.  And you're not sure about whether or not that
4    one firearm was secured before maybe the first or
5    second blow by Sergeant Turner?
6        A.  Yes, that's correct.
7        Q.  It could be either way.  You're just not sure
8    of the chronology, correct?
9        A.  I am not sure.
10       Q.  Okay.  You said in your CRT interview that he
11   was slow to show us his hands.  Eventually he put his
12   hands out in front of his head.  Do you recall that
13   being the case?  Not that you said it, but that's
14   actually what happened, I mean.
15       A.  I remember not seeing his hands, and it
16   wasn't until after he was tased that we were able to
17   see his hands as we were able to pull his hands out
18   from underneath him.
19       Q.  So you don't recall actually -- and I can
20   show you the video again.  It's a little bit hard to
21   see.
22           But when you first approached him before
23   anyone had even touched him, he had his hands out in
24   front of him -- when he was in that prone position, he
25   had his hands out in front of his head and his face

30

1    like this, and then you all started asking him to put
2    his hands behind his back.  Do you recall that?
3        A.  I don't recall seeing his hands out in front
4    of him.
5        Q.  I'm going to try to show you that part of the
6    video real quick.  I'm going to rewind a little bit and
7    just try to find that part.
8           My computer seems to be stuck here.  Can you
9    still hear me, sir?
10       A.  Yes.
11       Q.  All right.  We'll get back to that in a
12   little bit perhaps.  I'll see if I can get the video to
13   work.
14           Sergeant Turner hit Mr. Poer with what?
15       A.  His fist.
16       Q.  Sergeant Turner is a pretty big guy, right?
17       A.  Yes, sir.
18       Q.  What is he, like about 230 or something?
19       MR. RATNER:  Object to foundation.
20       A.  I don't know his weight.  He's a pretty big
21   guy.
22       Q.  (By Mr. Fisher)  Strong too, muscular?
23       A.  I would say yes.
24       Q.  And at least 6 foot 3 or so?
25       MR. RATNER:  Object to foundation.

31

1        A.  I know he's over 6 feet tall.
2        Q.  (By Mr. Fisher)  Okay.  Would you say he was
3    hitting Mr. Poer hard in the face or soft or something
4    in between?
5        A.  I'd say hard.
6        Q.  Which part of his head or face did Sergeant
7    Turner strike?
8        A.  I believe in the nose/facial area.
9    Definitely not the --
10       Q.  Definitely not the what?
11       A.  Not the skull.
12       Q.  Why would you say that?
13       A.  I mean, punching someone in the skull you're
14   going to break your hand.
15       Q.  Okay.  But did you actually see where the
16   blows landed?
17       A.  I recollect them hitting him in the facial
18   area.
19       Q.  Okay.  Did you see all of the blows, or did
20   you miss some of them perhaps?
21       MR. RATNER:  Object to foundation.
22       A.  Again, I didn't see all the blows.  I saw a
23   few.
24       Q.  (By Mr. Fisher)  And the ones you saw you
25   believe were in the facial and the nose area and not in

Deposition of:  Joshua Bjork - August 2, 2021
Sherry Poer v. Sheriff Tim Norton, et al.

32

1   the skull?
2       A.  Yes.
3       Q.  Tell me what happened after you guys turned
4   Mr. Poer over to the EMS.  Well, let me back up.
5       There was a point you guys turned Mr. Poer
6   over to the EMS, correct?
7       A.  Yes.
8       Q.  What did you do next?
9       A.  I believe I responded to the caller's house
10  to go speak with her.
11      Q.  That would be Elaine Holt?
12      A.  I believe so, yes.
13      Q.  And you did speak with her?
14      A.  Deputy Whitlock and I were up there to speak
15  with her, yes.
16      Q.  Was that the very next thing you did after
17  Mr. Poer was taken to -- or given to the EMS?
18      A.  I believe so, yes.
19      Q.  Did you speak with your -- to the sheriff or
20  any other commanders who came on scene first?
21      A.  It was I believe Sergeant Turner, because
22  there was no one on scene at that time.
23      Q.  Okay.  Eventually some of the command staff
24  showed up, correct?
25      A.  Yes.

33

1       Q.  Who was that?
2       A.  The sheriff showed up on scene.
3       Q.  And did you speak with him?
4       A.  At that point, yes, I did when he arrived on
5   the scene.
6       Q.  That was after you had conducted some
7   interviews?
8       A.  Just that one interview, yes.
9       Q.  Was that the only interview you conducted of
10  Elaine Holt, the homeowner?
11      A.  Yes.
12      Q.  What did she tell you?
13      A.  That Mr. Poer had been acting a little
14  erratically and had stolen her firearm from her and
15  then had left the house and was firing it in the air.
16      Q.  Did she say stolen a firearm, or he asked her
17  to give it to him?  Do you recall?
18      A.  I don't recall if...
19      Q.  Okay.  Before you physically -- before you
20  and the other two deputies physically encountered
21  Mr. Poer, you didn't know anything about his medical
22  history, correct?
23      A.  No.
24      Q.  Nor his medical status?
25      A.  No.

34

1       Q.  Nor his mental health history or current
2   mental status?
3       A.  No.
4       Q.  You didn't know anything about any criminal
5   history at that point, correct?
6       A.  No.
7       Q.  You didn't know anything about his status as
8   a retired Green Beret either?
9       A.  No.
10      Q.  Or a war hero?
11      A.  No.
12      MR. RATNER:  Object to form, foundation.
13      Q.  (By Mr. Fisher)  Did you learn any of those
14  things after the fact?
15      A.  Yes.
16      Q.  Which things?
17      A.  A little bit about his mental history, a
18  little bit about his medical history.  I didn't learn
19  about any of his military stuff until years later,
20  after the incident.
21      Q.  And how did you learn about the military
22  stuff?
23      A.  Through other deputies.
24      Q.  Which ones?
25      A.  I don't recall.

35

1       Q.  And how did you learn about the mental health
2   stuff and the physical health stuff?
3       A.  Through interviewing Elaine.
4       Q.  And what about criminal history?
5       A.  I don't know anything about his criminal
6   history still to this day.
7       Q.  You had never encountered Mr. Poer before
8   this incident, correct?
9       A.  No.
10      Q.  And you had never encountered Elaine Holt
11  before this incident?
12      A.  No.
13      Q.  You had never been to that address before
14  this incident, correct?
15      A.  No.
16      Q.  What did you do to prepare for this
17  deposition in terms of reviewing any documents or body
18  cam footage or paperwork or audiotape or anything like
19  that?
20      A.  I don't have any access to any paperwork
21  whatsoever, as the 18th Judicial took over the entire
22  investigation.  I've never seen the body cam footage
23  until today.  The only preparation I've had was
24  speaking to Mark prior to the deposition and him giving
25  me an outline of kind of what to expect.

Deposition of: Joshua Bjork - August 2, 2021
Sherry Poer v. Sheriff Tim Norton, et al.

**36**

1    MR. RATNER: Anything you and I talked about
2 is privileged, so don't testify about that.
3    THE WITNESS: Okay.
4    Q. (By Mr. Fisher) So not about the content of
5 what you guys talked about, but did you speak on the
6 phone ahead of time to prepare?
7    A. Yes.
8    Q. Just one time or more than once?
9    A. Twice.
10    Q. Once more recently and once further in the
11 past?
12    A. Yes.
13    Q. Who have you spoken with about this incident
14 since it happened?
15    A. I don't understand the question. What do you
16 mean?
17    Q. So you know what the incident is, right?
18    A. Yes.
19    Q. Who have you spoken with about the incident
20 since it's happened? I mean, I know you spoke to CRT
21 when they interviewed you, right?
22    A. Yes.
23    Q. Who else have you spoken with about the
24 incident?
25    A. Prior to today?

**37**

1    Q. Yeah.
2    A. Nobody really.
3    Q. You never talked to Deputy Dickey about it
4 afterwards?
5    A. I don't recall speaking to him about it, no.
6    Q. What about Shayne Heap?
7    A. The only time we ever spoke about it after it
8 happened was when he let us know that we were cleared
9 of any criminal charges.
10    Q. And what did he say to you and when was that?
11    A. I don't recall the date. He just gave us an
12 overview of the findings.
13    Q. And what did you understand that overview to
14 be?
15    A. That we acted justifiably that day and were
16 not grossly negligent.
17    Q. Okay. Did you ever speak to Sergeant Turner
18 about what had occurred?
19    A. I don't recall.
20    Q. You may have, you may not have; you just
21 can't specifically recall?
22    A. Exactly. I don't recall.
23    Q. Did you ever speak with friends or family
24 about what had happened?
25    A. I keep that stuff to myself, honestly.

**38**

1    Q. Okay. Is there a reason for that?
2    A. Umm, I just don't like my family to know
3 those kinds of details.
4    MR. FISHER: Let's take five minutes or so as
5 a break. Okay?
6    THE WITNESS: Okay.
7    (Recess taken from 9:45 a.m. to
8    9:50 a.m.)
9    Q. (By Mr. Fisher) Deputy Bjork, what do you do
10 currently for a living?
11    A. I'm a deputy sheriff with the Elbert County
12 Sheriff's Office.
13    Q. Still in the same position there, still a
14 deputy?
15    A. I'm currently a detentions deputy.
16    Q. And when did you change to a detentions
17 deputy?
18    A. This year.
19    Q. And what does that job entail?
20    A. I take care of inmates coming in off the
21 street, doing their booking intake, releases, provide
22 security inside the detentions facility, go to court,
23 do transports, that kind of stuff.
24    Q. How many inmates are there at the Elbert
25 County lockup?

**39**

1    A. At this time, I wouldn't know as I haven't
2 been to work for a week.
3    Q. Like last week, are we talking a couple, a
4 dozen, hundreds?
5    A. Approximately 30.
6    Q. Okay. Where is that facility?
7    A. 751 Ute Avenue, Kiowa, Colorado, Elbert
8 County, Colorado.
9    Q. Is it the same building as the sheriff's
10 office basically?
11    A. Yes, sir.
12    Q. Okay. And when did you -- what did you do
13 before that assignment, working in the detention
14 center?
15    A. I was a patrol deputy with the Elbert County
16 Sheriff's Office.
17    Q. Same as when the incident happened in this
18 case?
19    A. Yes, sir.
20    Q. How many years have you been with Elbert
21 County?
22    A. Up to this point, almost six.
23    Q. What did you do before that?
24    A. Prior to that, I was in the United States Air
25 Force as a security forces officer.

Deposition of:   Joshua Bjork - August 2, 2021
Sherry Poer v. Sheriff Tim Norton, et al.

**40**

1    Q.  For how many years?
2    A.  Eight years.
3    Q.  All domestic.
4    A.  I spent -- I spent two tours in Kuwait for a
5  total of 14 months.  I spent two years at Incirlik Air
6  Base, Turkey.  And then I spent a year in Germany.
7    Q.  Was any of that time overseas in combat?
8    A.  Kuwait was considered a hostile combat zone
9  at the time.
10   Q.  Was there a war going on?
11   A.  Operation Iraqi freedom.
12   Q.  What years was that in approximately?
13   A.  2007 and 2009.
14   Q.  Okay.  And what did you do before the Air
15 Force?
16   A.  Just graduated high school.
17   Q.  Did you grow up locally?
18   A.  In Colorado, no.
19   Q.  Where did you go to high school?
20     MR. RATNER:  Hold on a second.  So that kind
21 of personal identifying information is not something I
22 suggest that he put on the record.
23   Q.  (By Mr. Fisher)  I don't need the actual high
24 school.  I mean, what state were you in?
25   A.  Minnesota.

**41**

1    Q.  Okay.  And then moved out to Colorado to join
2  the Air Force or --
3    A.  The Air Force stationed me here.
4    Q.  Got you.  So high school, Air Force, Elbert
5  County Sheriff's Office.  Any other work history?
6    A.  I was a security guard with Allied Barton for
7  a period of like three, four months.
8    Q.  And any other educational history, other than
9  high school?
10   A.  No.  Just police academy.
11   Q.  You talked about Deputy Dickey being your
12 FTO, your field training officer, correct?
13   A.  Yes.
14   Q.  Approximately when was that?  I don't need
15 the years or anything.  I mean, when you first started
16 or something?
17   A.  No.  It was approximately a year and a half
18 after I had started with the sheriff's office.
19   Q.  Was he your only FTO?
20   A.  No, he wasn't.
21   Q.  Who else?
22   A.  I had Mike Skalisky, Jon Rolff, and Andrew
23 Oline as FTOs.
24   Q.  Was Dickey your FTO before or after the
25 incident in this case?

**42**

1    A.  He was my FTO before the incident.
2    Q.  How does one become an FTO?  What kind of
3  qualifications does one need?
4    A.  You have to attend a 40-hour field training
5  officer course.
6    Q.  Have you ever done that?
7    A.  I just completed it this week.
8    Q.  Okay.  So in the future you're going to be an
9  FTO?
10   A.  Yes.
11   Q.  Deputy Dickey was your FTO.  Were you
12 familiar at all with his prior law enforcement
13 experience at Commerce City?
14   A.  No, I was not.
15   Q.  Have you ever been made aware that he had
16 several incidents at Commerce City, which he was going
17 to be fired for, several use-of-force incidents?
18   A.  At the time, no, I was not.
19   Q.  Okay.  You've heard about that since?
20   A.  After he had left the office, yes.
21   Q.  And how did you hear about that?
22   A.  Through other deputies.
23   Q.  Which ones?
24   A.  I can't recall.  Just passing conversation.
25   Q.  Do you know why Deputy Dickey left Elbert

**43**

1  County Sheriff's Office?
2    A.  I do not.
3    Q.  Did you ever talk to him -- did he ever talk
4  to you about being frustrated with the way law
5  enforcement was being treated in general?
6    A.  On occasion, he did.
7    Q.  And what would he say?
8    A.  Just that he was frustrated with the way we,
9  as the law enforcement professionals, were treated, the
10 possible direction things were going.  He didn't really
11 elaborate too much.
12   Q.  You mean like actually treated by your
13 superiors or more about like what it was like in the
14 media or in the public perception?
15   A.  He was referring to media and public
16 perception.
17   Q.  Okay.  Do you still work with Sergeant
18 Turner?
19   A.  I do not currently, no.
20   Q.  Oh, because you're not at the -- you're not a
21 patrol deputy anymore.
22   A.  Yes.
23   Q.  Got you.
24     What kind of investigation, if you know, did
25 Elbert County conduct of the incident in this case?

Deposition of:  Joshua Bjork - August 2, 2021
Sherry Poer v. Sheriff Tim Norton, et al.

44

1     A.  To my understanding, as soon as the sheriff
2  showed up, he stopped everything we were doing, put us
3  all on our trucks, and headed it over to the 18th
4  Judicial Critical Response team.
5     Q.  And the 18th conducted an investigation,
6  correct?
7     A.  Yes.
8     Q.  The CRT, I should say, conducted an
9  investigation, correct?
10     A.  Yes.
11     Q.  And that was whether or not any criminal
12  charges should be brought against the deputies
13  involved, correct?
14     A.  Yes.
15     Q.  As far as policy and procedure in Elbert
16  County, did Elbert County conduct any kind of
17  investigation, to your knowledge, about whether or not
18  you all complied with Elbert County's policies and
19  procedures during the incident?
20     A.  To my knowledge, no, I'm not aware.
21     Q.  Did anybody from Elbert County Sheriff's
22  Office ever ask you any questions about the incident?
23     A.  No.
24     Q.  To your knowledge, did they ask any other
25  officers questions about the incident?

45

1     A.  No.
2     Q.  Did Elbert County ever make any kind of
3  findings about whether or not yourself and other
4  deputies involved were compliant with Elbert County's
5  policies and procedures?
6     A.  No, to my knowledge.
7     Q.  Well, sir, that is all the questions I have.
8  I thank you very much for your time.  And enjoy your
9  vacation.
10     A.  Thank you.  Time to go fishing.
11     MR. RATNER:  So, Deputy, in Colorado, you
12  have a choice.  You can either read the transcript that
13  the court reporter is going to prepare, and if there's
14  any suggested changes, like she took a name down wrong,
15  it's an opportunity for you to note these errors.
16     That's what we call reserving your signature.
17  Or if you trust the court reporter or you don't want to
18  review the transcript, then you can waive your
19  signature.  So what do you think you'd like to do?
20     THE WITNESS:  I'd like to review it.
21     MR. RATNER:  Okay.  So we'll reserve
22  signature.  You can handle that, Valorie, through my
23  office.
24     MR. FISHER:  You don't have any questions,
25  Mark, right?

46

1     MR. RATNER:  No, I don't have any questions.
2  (The deposition concluded at 10:00 a.m.)

47

1               AFFIDAVIT
2       I have read my deposition and it is true and
3  accurate, except for any changes or corrections now
4  indicated by me on the Amendment sheet.
5       Amendment sheet attached   ( )
6       No changes to testimony    ( )
7
8  _____
   JOSHUA BJORK
9  SUBSCRIBED AND SWORN to before me this
10  date, _____.
11
   My commission expires _____
12
13  _____
   NOTARY PUBLIC
14
15  _____
   STREET ADDRESS
16
   _____
17  CITY, STATE, ZIP
18
19
   Return to:  MILE HIGH COURT REPORTING & VIDEO, INC.
20        14143 Denver West Parkway
          Suite 100
21        Golden, Colorado 80401
22
23
24
25

Deposition of:  Joshua Bjork - August 2, 2021
Sherry Poer v. Sheriff Tim Norton, et al.

48

1              CERTIFICATE
2
3         I, Valorie S. Huddleston, RPR, Notary Public
4   of the State of Colorado, do hereby certify that prior
5   to the commencement of the Deposition of JOSHUA BJORK,
6   said witness was sworn by me to testify to the truth in
7   relation to the matters in controversy between the
8   parties hereto; that the said examination was taken in
9   machine shorthand by me and was thereafter reduced to
10  typewritten form, and that the foregoing is a true and
11  accurate transcript of the questions asked, testimony
12  given, and proceedings had.
13        I further certify that I am not related to any
14  party herein, nor their counsel, and have no interest in
15  the result of this litigation.
16        IN WITNESS WHEREOF, I have affixed my
17  signature this 10th day of August, 2021.
18
19
        _____
20      Valorie S. Huddleston, RPR
        My Commission expires 12/10/2023
21      Notary No. 19954017709
22
23
24
25

**Mile High Court Reporting and Video, Inc.   303-202-0210**
**contact@milehighreporting.com**

Deposition of:  Joshua Bjork - August 2, 2021
Sherry Poer v. Sheriff Tim Norton, et al.

August 11, 2021


MARK S. RATNER, ESQ.
Hall & Evans, LLC
1001 Seventeenth Street, Suite 300
Denver, CO  80202


RE:  Sherry Poer vs. Sheriff Tim Norton, et al.
     Civil Action No. 19-cv-01088(LTB)(NRN)
     Deposition of Joshua Bjork
     Taken:  August 2, 2021


Dear Mr. Ratner,


Attached with your electronic copy of the
above-referenced deposition is the signature page from
the Court's original transcript.


In accordance with the Rule, please have the witness
read and sign his or her testimony, then return the
executed signature page and any amendment sheets used
to us within 35 days of the date of this letter.


Sincerely,


MILE HIGH COURT REPORTING & VIDEO, INC.


Encl.


cc:  Original transcript
     David N. Fisher, Esq.

Deposition of:  Joshua Bjork - August 2, 2021
Sherry Poer v. Sheriff Tim Norton, et al.

Page 1

**A**

**a.m**
1:17 38:7,8 46:2
**able**
13:20 17:18
26:4 29:16,17
**above-mentio...**
50:9
**above-referen...**
49:11 50:7
**academy**
41:10
**access**
35:20
**accurate**
47:3 48:11
**acreage**
10:7,8
**acres**
9:19,25 10:12
**acted**
37:15
**acting**
6:25 33:13
**Action**
1:2 49:6 50:4
**activate**
17:10
**actual**
40:23
**address**
35:13 47:15
**administered**
28:25
**Administratrix**
1:6
**advised**
8:5 12:1
**AFFIDAVIT**
47:1
**affixed**
48:16
**agreement**
50:14

**ahead**
26:12 36:6
**air**
33:15 39:24
  40:5,14 41:2,3
  41:4
**al**
49:6 50:3
**Allied**
41:6
**allowed**
26:7
**amendment**
47:4,5 49:14
**Andrew**
41:22
**answer**
4:24 5:6,13,14
  8:11 9:16
**anybody**
28:19 44:21
**anymore**
43:21
**apart**
9:4,14,17
**APPEARAN...**
2:1
**appearing**
1:16
**apprehend**
13:24
**approach**
11:5 12:12,16
  13:4
**approached**
13:2,7 29:22
**approaching**
12:22 13:20
  18:9
**approximately**
5:23 19:19 39:5
  40:12 41:14,17
**area**
8:25 9:1,3,13

19:21 22:24
31:8,18,25
**argumentative**
11:12
**arm**
21:11,21,25
**arms**
20:12
**arrived**
6:14 7:2,18,19
  7:24 8:7 9:11
  10:20 11:3
  12:1,2 33:4
**arriving**
13:23
**asked**
27:17 33:16
  48:11
**asking**
10:8 30:1
**assignment**
39:13
**assume**
5:21
**attached**
47:5 49:10
  50:11,13
**attempting**
13:24 21:5,6
**attend**
42:4
**attest**
26:23
**attorney**
5:8
**audio-taped**
25:4
**audiotape**
35:18
**August**
1:4,18 48:17
  49:1,7 50:5
**Avenue**
39:7

**aware**
16:7,9 28:15
  42:15 44:20

**B**

**back**
11:24 20:3,23
  20:24 21:2,4,7
  21:18 22:6,14
  22:16,24 25:5
  25:9 28:14
  30:2,11 32:4
**ballistic**
12:3,6
**Barton**
41:6
**Base**
40:6
**basically**
39:10
**BEHALF**
2:2,6
**believe**
14:5 19:7,8,14
  19:19 28:6
  31:8,25 32:9
  32:12,18,21
**believes**
26:21
**bell**
19:18
**belly**
21:13,15 23:3
**Beret**
34:8
**best**
5:4
**big**
9:8 30:16,20
**bit**
25:16 29:20
  30:6,12 34:17
  34:18
**Bjork**

1:4,15 4:3,8
  16:8 38:9 47:8
  48:5 49:7 50:4
**blow**
29:5
**blows**
17:24 19:21
  28:25 31:16,19
  31:22
**body**
11:16,22 16:3,4
  16:5,8,9,11,16
  16:19 17:11
  20:18 26:20
  35:17,22
**booking**
38:21
**break**
31:14 38:5
**breathing**
24:7 27:17
**briefly**
4:19
**brought**
44:12
**building**
39:9
**bunch**
4:21
**Byrialsen**
2:3 50:1

**C**

**C**
4:1
**call**
6:15 45:16
**called**
1:15 8:6
**caller's**
32:9
**cam**
11:16,22 16:3,4
  16:5,8,9,11,16

Deposition of:  Joshua Bjork - August 2, 2021
Sherry Poer v. Sheriff Tim Norton, et al.

Page 2

26:20 35:18,22
**camera**
17:12
**cams**
16:19
**capabilities**
23:10
**capable**
23:13
**capacities**
1:11
**capacity**
1:10
**car**
12:7
**care**
38:20
**case**
6:1,2,12 29:13
39:18 41:25
43:25 50:17
**cc**
49:20 50:21
**center**
39:14
**certain**
5:9
**CERTIFICA...**
48:1
**certify**
48:4,13
**change**
38:16
**changes**
45:14 47:3,6
50:10,11,12,13
**charge**
7:4 23:25
**charges**
37:9 44:12
**Children**
1:7
**choice**
45:12

**CHRIS**
1:10
**CHRISTOPH...**
1:6
**chronology**
29:8
**city**
9:8 42:13,16
47:16
**Civil**
1:2 49:6 50:4,8
**cleared**
37:8
**close**
13:2
**closing**
26:6
**Colorado**
1:1,20 39:7,8
40:18 41:1
45:11 47:21
48:4
**combat**
40:7,8
**coming**
12:5 38:20
**command**
32:23
**commanders**
32:20
**commence**
18:23,25
**commencement**
48:5
**commencing**
1:17
**Commerce**
42:13,16
**commission**
47:11 48:20
**completed**
42:7
**compliant**
45:4

**complied**
44:18
**computer**
30:8
**concentrated**
24:12,18
**concluded**
46:2
**conduct**
43:25 44:16
**conducted**
33:6,9 44:5,8
**confusion**
15:4
**considered**
40:8
**content**
36:4
**control**
7:14,15
**controversy**
48:7
**conversation**
42:24
**copy**
49:10 50:11,13
**correct**
6:15 7:15 8:4,9
8:14 9:1,4,8,11
10:21 11:1,2,5
13:5,21 14:2,3
14:8,12,15,20
15:13 19:3
20:6 21:16,20
21:23 22:1,17
22:21,24 23:20
24:2 27:25
28:8,12,16,19
28:22 29:1,6,8
32:6,24 33:22
34:5 35:8,14
41:12 44:6,9
44:13
**corrections**

47:3
**counsel**
48:14 50:14
**counting**
19:24
**county**
6:4 8:19 38:11
38:25 39:8,15
39:21 41:5
43:1,25 44:16
44:16,21 45:2
**County's**
44:18 45:4
**couple**
39:3
**course**
42:5
**court**
1:1 5:1,19,21
38:22 45:13,17
47:19 49:17
50:20
**Court's**
49:11
**cover**
13:5
**COVID-19**
1:17
**criminal**
34:4 35:4,5 37:9
44:11
**Critical**
44:4
**CRT**
19:17 25:5 28:5
29:10 36:20
44:8
**cuff**
21:5,6 25:25
26:5
**cuffed**
21:19,25 22:7
23:22 26:8,8
**cuffing**

21:9 24:17
27:21
**cuffs**
24:13,18,19
26:16 27:13,18
**current**
34:1
**currently**
16:22 38:10,15
43:19
**cursed**
13:18
**cursing**
13:13
**custody**
6:4

**D**

**D**
4:1
**date**
37:11 47:10
49:14 50:7
**David**
2:3 4:10 16:2
49:21 50:1
**david@fblaw....**
2:5
**day**
6:3 7:1,10 8:1,2
16:11 35:6
37:15 48:17
**days**
49:14
**dealing**
23:12
**Dear**
49:9 50:6
**Deceased**
1:6,7
**defendant**
4:13
**Defendants**
1:12 2:6 6:11

Deposition of:  Joshua Bjork - August 2, 2021
Sherry Poer v. Sheriff Tim Norton, et al.

Page 3

Definitely
31:9,10
densely
8:25
Denver
2:4,8 47:20 49:4
  50:2
department
16:19
deposition
1:4,14 4:17,20
  25:3 26:21
  35:17,24 46:2
  47:2 48:5 49:7
  49:11 50:4,7,9
  50:15,18
deputies
7:4 33:20 34:23
  42:22 44:12
  45:4
deputy
1:10 4:8 6:17,21
  6:23,23 7:3,10
  8:7 11:10,23
  12:10,21 14:10
  15:9 16:15,23
  20:19 24:8
  25:19 27:12,16
  32:14 37:3
  38:9,11,14,15
  38:17 39:15
  41:11 42:11,25
  43:21 45:11
description
6:9
details
38:3
detained
25:22 27:15
detention
39:13
detentions
38:15,16,22
Dickey

1:10 6:17,23 7:4
  7:10 8:7 11:23
  12:10,21 14:10
  15:9 16:15,23
  20:19 24:8
  25:19 27:12,16
  37:3 41:11,24
  42:11,25
Dickey's
6:21 11:11
difficult
23:2
direction
8:14,17,18
  24:15 43:10
directs
5:14
discuss
12:21
dispatch
8:5 28:18
DISTRICT
1:1,1
documents
35:17
doing
15:3 22:19
  24:17,25 38:21
  44:2
domestic
40:3
dozen
39:4
Dozens
5:23
due
1:17 15:4 26:5
duly
4:4
duty
7:1
_____
E
E

4:1,1
educational
41:8
effect
13:11
Eight
40:2
either
6:2 14:25 23:2
  25:13 29:7
  34:8 45:12
elaborate
43:11
Elaine
32:11 33:10
  35:3,10
Elbert
6:4 38:11,24
  39:7,15,20
  41:4 42:25
  43:25 44:15,16
  44:18,21 45:2
  45:4
electricity
20:6 24:1
electronic
49:10
EMS
32:4,6,17
Encl
49:19
encountered
33:20 35:7,10
enforcement
10:21,24 42:12
  43:5,9
enjoy
45:8
entail
38:19
entire
35:21
entirely
26:19

erratically
33:14
errors
45:15
Esq
2:3,7 49:3,21
  50:1,22
established
10:4,6
Estate
1:6
et
49:6 50:3
Evans
2:7 49:3
evening
8:1 10:20
event
10:18
eventually
11:4 13:4,20
  21:23 26:7
  27:9 29:11
  32:23
exact
11:14
Exactly
37:22
examination
1:15 3:2 4:6
  48:8
examined
4:4
executed
49:14
EXHIBITS
3:6
expect
35:25
experience
6:25 42:13
expires
47:11 48:20
explain

4:19 8:24
extent
6:9
_____
F
face
19:21 27:8
  29:25 31:3,6
facedown
21:15
facial
31:17,25
facility
38:22 39:6
fact
34:14
familiar
42:12
family
37:23 38:2
far
9:4,14,17 44:15
feet
14:4 31:1
fell
28:6
field
7:21 9:10 10:19
  12:12,22 17:8
  41:12 42:4
fight
22:25
fighting
26:14,17
figure
15:21
filed
50:7,9
find
13:25 17:5 30:7
findings
37:12 45:3
finish
5:5

Deposition of: Joshua Bjork - August 2, 2021
Sherry Poer v. Sheriff Tim Norton, et al.

Page 4

| | | | | |
|---|---|---|---|---|
| fire<br>13:21<br>firearm<br>13:21,25 14:1,6<br>  14:17,18 28:16<br>  29:4 33:14,16<br>fired<br>7:23,25 8:4<br>  42:17<br>firing<br>7:21 33:15<br>first<br>4:4 11:23,25<br>  13:9 15:23<br>  27:11 29:4,22<br>  32:20 41:15<br>Fisher<br>2:3,3 3:3 4:7,10<br>  6:10,13 7:18<br>  8:11,16,22 9:7<br>  9:16,19,23<br>  10:2,10,11,16<br>  10:25 11:8,15<br>  12:20 14:1,24<br>  15:6,20 16:3,5<br>  16:7 17:2,18<br>  18:14,22 20:5<br>  23:6,18 24:6<br>  25:18 26:12<br>  30:22 31:2,24<br>  34:13 36:4<br>  38:4,9 40:23<br>  45:24 49:21<br>  50:1,1,6<br>fishing<br>45:10<br>fist<br>30:15<br>five<br>19:21 38:4<br>flatbed<br>28:7<br>Floor<br>2:4 50:2 | follows<br>4:5<br>foot<br>30:24<br>footage<br>11:16,23 35:18<br>  35:22<br>Force<br>39:25 40:15<br>  41:2,3,4<br>forces<br>39:25<br>foregoing<br>48:10<br>form<br>7:17 8:10,21 9:6<br>  9:15,22 10:1<br>  11:6,12 12:19<br>  13:22 14:21<br>  15:2,18 26:10<br>  34:12 48:10<br>formulated<br>11:4,13<br>found<br>14:1,2<br>foundation<br>8:10,21 9:6 10:1<br>  10:5,9,22<br>  16:25 23:4<br>  26:10 30:19,25<br>  31:21 34:12<br>foundational<br>10:6<br>four<br>5:25 41:7<br>frankly<br>8:20<br>freedom<br>40:11<br>friends<br>37:23<br>front<br>29:12,24,25<br>  30:3 | frustrated<br>43:4,8<br>FTO<br>41:12,19,24<br>  42:1,2,9,11<br>FTOs<br>41:23<br>Fucker<br>18:4<br>fuckin'<br>13:12,12,13<br>  24:9,10<br>further<br>4:5 36:10 48:13<br>future<br>42:8<br>_____<br>G<br>G<br>4:1<br>G.P<br>1:6<br>general<br>8:12,14,17,18<br>  43:5<br>Germany<br>40:6<br>getting<br>24:12 25:25<br>  28:7<br>give<br>5:5 24:9,9,10<br>  27:24 33:17<br>given<br>32:17 48:12<br>giving<br>22:4 35:24<br>go<br>12:2 26:12<br>  32:10 38:22<br>  40:19 45:10<br>Goddamn<br>25:19 26:2<br>going | 4:19,20 6:8,9<br>  7:19 11:5<br>  15:20 17:15,21<br>  18:2,4,7,7,8,12<br>  18:20 20:2,16<br>  23:15 25:15<br>  26:3 28:14<br>  30:5,6 31:14<br>  40:10 42:8,16<br>  43:10 45:13<br>Golden<br>47:21<br>good<br>4:8,9<br>governing<br>50:8<br>grab<br>14:11,11 15:10<br>grabbed<br>14:11<br>graduated<br>40:16<br>Green<br>34:8<br>grossly<br>37:16<br>ground<br>22:20<br>grow<br>40:17<br>guard<br>41:6<br>guess<br>19:24 22:14<br>gun<br>14:11 15:1,5,7,8<br>  15:12,15 17:22<br>  18:15 19:2<br>  28:1,14,16,16<br>  28:19,21,24<br>gun's<br>15:9<br>guy<br>12:16 30:16,21 | guys<br>6:4 12:5 18:9<br>  28:11 32:3,5<br>  36:5<br>_____H_____<br>half<br>41:17<br>Hall<br>2:7 49:3<br>hand<br>20:16 22:4,5<br>  23:19,19,23<br>  24:9,10 26:8<br>  26:18 31:14<br>handcuff<br>20:9 25:19 26:2<br>handcuffs<br>20:10,11 25:1<br>handle<br>45:22<br>hands<br>13:12,13,17<br>  18:4 21:19<br>  23:2 29:11,12<br>  29:15,17,17,23<br>  29:25 30:2,3<br>happen<br>16:23<br>happened<br>25:12 29:14<br>  32:3 36:14,20<br>  37:8,24 39:17<br>happening<br>17:23<br>hard<br>29:20 31:3,5<br>head<br>14:19,25 15:16<br>  17:24 18:18<br>  19:6,21 28:25<br>  29:12,25 31:6<br>headed<br>44:3 |

Deposition of:  Joshua Bjork - August 2, 2021
Sherry Poer v. Sheriff Tim Norton, et al.

Page 5

---

heads
4:24
health
34:1 35:1,2
Heap
37:6
hear
7:23,25 8:2,16
  17:18 18:5,14
  18:22,24 20:5
  20:6,8,9 23:18
  23:25 24:7,8
  25:18,20,21
  30:9 42:21
heard
8:3 18:3 20:19
  42:19
heavy
24:7
help
28:12
hereto
48:8
hero
34:10
high
40:16,19,23
  41:4,9 47:19
  49:17 50:20
highest
7:8
history
33:22 34:1,5,17
  34:18 35:4,6
  41:5,8
hit
14:19 18:17
  19:5 30:14
hitting
24:10 31:3,17
Hold
17:13 40:20
Holt
32:11 33:10

35:10
homeowner
33:10
honestly
11:13 37:25
hostage
11:1
hostile
40:8
house
32:9 33:15
houses
7:21 9:4,13,18
  9:20
Huddleston
1:18 48:3,20
hundreds
39:4

---I---
idea
8:8,12 9:24 11:8
  23:10
identifying
40:21
imagine
19:25
implies
6:11
impossible
23:2
incident
6:2,14 16:12
  17:4,4 34:20
  35:8,11,14
  36:13,17,19,24
  39:17 41:25
  42:1 43:25
  44:19,22,25
incidents
42:16,17
Incirlik
40:5
INDEX

3:1
indicated
47:4
individual
1:11 7:20 8:8
  21:4 23:11
individuals
10:23
information
40:21
inmates
38:20,24
inside
38:22
intake
38:21
intentions
7:22
interest
48:14
interview
19:17,21 25:4,5
  28:5 29:10
  33:8,9
interviewed
36:21
interviewing
35:3
interviews
33:7
investigation
35:22 43:24
  44:5,9,17
involved
44:13 45:4
Iraqi
40:11

---J---
job
38:19
join
41:1
Jon

41:22
Joshua
1:4,15 4:3 47:8
  48:5 49:7 50:4
Judicial
35:21 44:4
justifiably
37:15

---K---
keep
18:7,12,20 20:2
  23:15 24:4
  25:15 37:25
killed
6:3,12
kind
9:17 23:11
  35:25 38:3,23
  40:20 42:2
  43:24 44:16
  45:2
Kiowa
39:7
knee
20:20,22 21:1,3
  21:7,7,18
  22:14
knew
8:13
knocked
26:21 27:1,3
know
8:22 9:20 10:5
  10:17 12:6
  15:11 16:14,17
  17:1,2,7,11
  23:5,7,9,12,12
  24:12 26:25
  27:3 28:4
  30:20 31:1
  33:21 34:4,7
  35:5 36:17,20
  37:8 38:2 39:1

42:25 43:24
knowledge
10:6 16:20,22
  44:17,20,24
  45:6
knows
10:7
Kuwait
40:4,8

---L---
landed
31:16
law
5:19 10:20,24
  42:12 43:4,9
lawsuit
4:14
laying
21:13,15
learn
34:13,18,21
  35:1
left
20:16 22:4
  33:15 42:20,25
let's
6:7,13 11:23
  13:7 38:4
letter
49:14
light
18:10
listen
7:11
litigation
48:15
little
25:15 27:15
  29:20 30:6,12
  33:13 34:17,18
living
38:10
LLC

Deposition of:  Joshua Bjork - August 2, 2021
Sherry Poer v. Sheriff Tim Norton, et al.

Page 6

2:7 49:3
**locally**
40:17
**lockup**
38:25
**looking**
24:14 25:1
**lost**
27:25 28:4
**lower**
22:24
**lying**
14:4

---
**M**

**M.P**
1:6
**machine**
48:9
**making**
23:1
**Mark**
2:7 35:24 45:25
49:3 50:22
**marked**
3:7
**matters**
48:7
**mean**
8:22 15:8 19:24
22:3 23:14
29:14 31:13
36:16,20 40:24
41:15 43:12
**media**
43:14,15
**medical**
28:12 33:21,24
34:18
**memory**
25:13
**mental**
34:1,2,17 35:1
**met**

4:11
**mic**
25:21
**middle**
20:23,24 21:1,4
**Mike**
41:22
**MILE**
47:19 49:17
50:20
**military**
34:19,21
**mind**
23:14
**Minnesota**
40:25
**Minor**
1:7
**minutes**
38:4
**months**
40:5 41:7
**morning**
4:8,9
**Mother**
18:4
**move**
20:19
**moved**
41:1
**moving**
27:17
**muscular**
30:22

---
**N**

**N**
2:3 4:1 49:21
50:1
**name**
4:10 45:14
**near**
7:21 10:19 12:2
**nearby**

9:18
**need**
40:23 41:14
42:3
**negligent**
37:16
**never**
4:11 11:18,19
23:14 35:7,10
35:13,22 37:3
**Ninth**
2:4 50:2
**nodding**
4:23
**Norton**
1:10 49:6 50:3
**nose**
31:25
**nose/facial**
31:8
**Notary**
1:19 47:13 48:3
48:21
**note**
45:15
**notice**
1:14 27:9,11,21
50:16
**noticed**
27:16

---
**O**

**O**
4:1
**oath**
5:17,18
**object**
5:9 6:8,9 7:17
8:10,21 9:6,15
9:22 10:1,22
11:6,12 12:19
13:22 14:21
15:2,18 16:25
23:4 26:10

30:19,25 31:21
34:12
**objecting**
10:9
**objection**
5:12 8:15 10:2
10:15
**obviously**
22:15
**occasion**
43:6
**occasionally**
5:9
**occur**
28:3
**occurred**
17:24 37:18
**office**
38:12 39:10,16
41:5,18 42:20
43:1 44:22
45:23 50:16
**officer**
39:25 41:12
42:5
**officers**
16:19 17:8 25:9
44:25
**official**
1:10
**Oh**
11:20 43:20
**okay**
4:21,24 5:6 6:1
6:7,10,13 7:9
10:18,25 11:15
11:20 12:10
13:19 14:24
15:11,20,22
16:6,11,23
17:9,13,13,21
17:25 18:1,2
18:12,17,20,22
19:8,17,20,24

21:6,13 23:6
23:14 24:14,20
25:3,8,20
26:14,20 27:14
27:24 28:18
29:10 31:2,15
31:19 32:23
33:19 36:3
37:17 38:1,5,6
39:6,12 40:14
41:1 42:8,19
43:17 45:21
**Oline**
41:23
**once**
19:7,8,12 36:8
36:10,10
**ones**
31:24 34:24
42:23
**open**
9:10 10:18
**Operation**
40:11
**opportunity**
45:15
**opposite**
9:7
**original**
49:11,20 50:7
50:21
**outline**
35:25
**overseas**
40:7
**overview**
37:12,13

---
**P**

**P**
4:1
**PA**
12:23
**page**

Deposition of:  Joshua Bjork - August 2, 2021
Sherry Poer v. Sheriff Tim Norton, et al.

3:2 49:11,14
**paperwork**
35:18,20
**Parkway**
47:20
**part**
8:19,20 11:21
15:21 17:22
30:5,7 31:6
**particular**
24:23
**parties**
1:16 48:8
**party**
48:14
**passed**
27:16
**passing**
42:24
**patrol**
39:15 43:21
**people**
8:3,5 9:3 10:19
**perception**
43:14,16
**period**
41:7
**person**
14:2
**personal**
16:16 40:21
**phone**
12:23 36:6
**physical**
35:2
**physically**
24:25 33:19,20
**picked**
14:6
**place**
21:3
**placing**
22:15
**Plaintiff**

**1:15** 2:2
**Plaintiffs**
1:8
**plan**
11:4,14
**played**
24:7
**playing**
17:17 18:12,13
18:20,21 20:2
20:4 23:15,17
24:4,5,24
25:15,17
**please**
8:24 49:13
**PLLC**
2:3 50:1
**Poer**
1:6,6 6:3,12 8:8
9:10 10:18
11:5 12:2
13:20,24 14:14
14:17,19 18:18
19:6 21:14
24:10,19,21
25:5 26:22
27:2,3,5 28:7
30:14 31:3
32:4,5,17
33:13,21 35:7
49:6 50:3
**Poer's**
20:12,25 25:9
**point**
12:10,16 13:19
18:17 19:3,5
22:16 24:1,6
24:11,23 26:1
26:15,15 27:2
27:4,6,25 32:5
33:4 34:5
39:22
**police**
12:11,23 41:10

**policies**
44:18 45:5
**policy**
44:15
**populated**
8:25 9:1
**position**
21:16 22:15
29:24 38:13
**positioning**
26:5
**possible**
19:22 23:1
43:10
**pounds**
22:11
**preparation**
35:23
**prepare**
35:16 36:6
45:13
**pretty**
9:13 30:16,20
**prevent**
21:4
**prior**
21:12 35:24
36:25 39:24
42:12 48:4
**privileged**
36:2
**probably**
22:11
**procedure**
44:15 50:8
**procedures**
44:19 45:5
**proceed**
5:13
**proceedings**
48:12
**process**
24:17
**Professional**

**1:19**
**professionals**
43:9
**prone**
21:16 22:15
29:24
**provide**
38:21
**public**
1:19 43:14,15
47:13 48:3
**pull**
21:21 22:5
29:17
**punched**
14:25 15:16
**punching**
14:23 31:13
**purpose**
22:19,23
**pursuant**
1:14 50:8,14
**put**
13:12,13 14:6
14:11 15:12
18:4 28:15
29:11 30:1
40:22 44:2
**putting**
20:11 25:8

**Q**
**qualifications**
42:3
**question**
5:5,14,15 10:3
11:24 36:15
**questions**
4:21 5:9 44:22
44:25 45:7,24
46:1 48:11
**quick**
30:6
**quote/unquote**

26:14

**R**
**R**
4:1
**radio**
25:22
**rank**
6:20,21,21
**ranking**
7:8
**ratchet**
25:21
**ratcheting**
20:8
**Ratner**
2:7 3:4 5:8 6:8
6:11 7:17 8:10
8:15,21 9:6,15
9:22 10:1,4,15
10:22 11:6,12
12:19 13:22
14:21 15:2,18
16:1,4,6,25
23:4 26:10
30:19,25 31:21
34:12 36:1
40:20 45:11,21
46:1 49:3,9
50:22
**ratnerm@hall...**
2:9
**read**
45:12 47:2
49:13
**real**
30:6
**really**
12:16 13:2 37:2
43:10
**reason**
38:1
**recall**
11:13,25 12:4,8

Deposition of:  Joshua Bjork - August 2, 2021
Sherry Poer v. Sheriff Tim Norton, et al.

Page 8

| | | | | |
|---|---|---|---|---|
| 12:9,13,14,15 | reporter | 10:10 15:17 | screaming | service |
| 13:8,8,17 | 1:19 5:1 45:13 | 17:15 18:3,7 | 13:14 | 6:15,24 |
| 14:22 15:3,19 | 45:17 | 18:10,23 19:11 | screen | settled |
| 25:11 26:19,22 | **REPORTING** | 20:2,14 21:10 | 17:16 | 50:17 |
| 27:1 29:12,19 | 47:19 49:17 | 21:21,25 22:5 | sec | **Seventeenth** |
| 30:2,3 33:17 | 50:20 | 23:22,23 24:21 | 17:13 27:24 | 2:8 49:4 |
| 33:18 34:25 | reports | 24:24 25:23 | second | share |
| 37:5,11,19,21 | 28:18 | 27:18 30:11,16 | 20:3 23:15 | 17:15 |
| 37:22 42:24 | represent | 36:17,21 45:25 | 25:25 26:7,8 | **Shayne** |
| received | 11:20,22 | ring | 26:18 29:5 | 37:6 |
| 50:16 | required | 19:18 | 40:20 | sheet |
| **Recess** | 50:19 | **Rolff** | secured | 47:4,5 |
| 38:7 | reserve | 41:22 | 14:7,17,18 15:1 | sheets |
| recollect | 45:21 | rounds | 15:11,15 19:2 | 49:14 |
| 31:17 | reserving | 7:21,23,25 8:3 | 28:21,24 29:4 | sheriff |
| recollection | 45:16 | **RPR** | security | 1:10 32:19 33:2 |
| 17:24 | residence | 48:3,20 | 38:22 39:25 | 38:11 44:1 |
| record | 28:17 | **Rule** | 41:6 | 49:6 50:3 |
| 5:13 18:24 | resisting | 49:13 | see | sheriff's |
| 40:22 | 22:2,3 26:15,17 | rules | 6:7 15:21 17:18 | 16:18 38:12 |
| recorded | respect | 4:20 50:8 | 18:9 24:20 | 39:9,16 41:5 |
| 19:17,20 | 10:7 | rural | 27:5,7 29:17 | 41:18 43:1 |
| reduced | responded | 8:19,20,23 | 29:21 30:12 | 44:21 |
| 48:9 | 32:9 | ——————— | 31:15,19,22 | **Sherry** |
| referring | **Response** | **S** | seeing | 1:6 49:6 50:3 |
| 6:1,3 43:15 | 44:4 | **S** | 13:24 29:15 | shield |
| refresh | restrictions | 1:18 2:7 4:1 | 30:3 | 12:2,3,6,12 |
| 17:23 | 1:17 | 48:3,20 49:3 | seen | shifted |
| **Registered** | result | saw | 11:16 15:24 | 26:9,13 |
| 1:19 | 48:15 | 31:22,24 | 35:22 | shoot |
| related | retired | saying | sergeant | 12:17 13:12 |
| 48:13 | 34:8 | 4:23 10:11 12:4 | 1:10 6:22,25 7:1 | 18:5 |
| relation | return | 12:6 13:16,17 | 7:3,3,6,9,11 | shorthand |
| 48:7 | 47:19 49:13 | 22:7 23:7,8,19 | 11:9,10 12:1 | 48:9 |
| releases | review | 23:20 24:9 | 12:15,21 13:8 | show |
| 38:21 | 45:18,20 | 25:19,20,22 | 14:20,22,24 | 13:17 15:20 |
| remember | reviewed | scene | 18:3,17 19:5 | 29:11,20 30:5 |
| 11:15,22 12:5 | 50:15 | 6:14 7:2,15,24 | 19:20 23:18 | showed |
| 12:17,18 13:18 | reviewing | 8:7 11:3 13:23 | 24:8,16,20,25 | 17:9 32:24 33:2 |
| 29:15 | 35:17 | 32:20,22 33:2 | 25:3,22 26:20 | 44:2 |
| remote | rewind | 33:5 | 26:23 27:1 | sign |
| 1:14 | 30:6 | school | 29:5 30:14,16 | 49:13 |
| remotely | right | 40:16,19,24 | 31:6 32:21 | signature |
| 1:16 | 6:5 7:12 8:13,20 | 41:4,9 | 37:17 43:17 | 45:16,19,22 |

Deposition of:  Joshua Bjork - August 2, 2021
Sherry Poer v. Sheriff Tim Norton, et al.

Page 9

| | | | | |
|---|---|---|---|---|
| 48:17 49:11,14 50:18,19 | 33:3 36:5 37:17,23 | 44:2 | **T** | 45:8,10 |
| **signed** | **speaking** | **street** | **take** | **thing** |
| 50:10,11,15 | 35:24 37:5 | 2:4,8 38:21 | 5:1,18 7:12 38:4 | 32:16 |
| **Sincerely** | **specific** | 47:15 49:4 | 38:20 | **things** |
| 49:16 | 10:8 | 50:2 | **taken** | 13:11 34:14,16 |
| **sir** | **specifically** | **strike** | 1:16 28:17 | 43:10 |
| 4:8,25 5:3,7,11 | 37:21 | 24:20 31:7 | 32:17 38:7 | **think** |
| 5:16,20,22 6:6 | **spent** | **Strong** | 48:8 49:7 50:5 | 10:13 14:24 |
| 6:16,19 8:11 | 40:4,4,5,6 | 30:22 | **talk** | 19:22 28:8 |
| 8:16 9:16 | **spoke** | **struck** | 6:13 12:24 13:1 | 45:19 |
| 10:16 11:7 | 36:20 37:7 | 19:7,8,14,15 | 13:7 43:3,3 | **three** |
| 17:14 19:23 | **spoken** | **stuck** | **talked** | 5:25 7:5,14 |
| 20:13,15,21 | 36:13,19,23 | 30:8 | 36:1,5 37:3 | 19:18,19 41:7 |
| 30:9,17 39:11 | **spotting** | **stuff** | 41:11 | **Tim** |
| 39:19 45:7 | 13:8 | 34:19,22 35:2,2 | **talking** | 1:10 49:6 50:3 |
| **situation** | **staff** | 37:25 38:23 | 16:1 20:20 | **time** |
| 11:1 15:4 | 32:23 | **SUBSCRIBED** | 27:14 39:3 | 6:20,22,24 9:10 |
| **six** | **standing** | 47:9 | **tall** | 10:19,23 13:16 |
| 39:22 | 21:5 | **sued** | 31:1 | 15:23 16:18 |
| **Skalisky** | **start** | 1:11 4:14 | **tased** | 19:25 20:12,17 |
| 41:22 | 11:24 20:3 | **suggest** | 14:14,18 15:13 | 20:18,23 21:9 |
| **skip** | **started** | 40:22 | 29:16 | 21:12,14,19 |
| 17:21 | 13:11,19 14:22 | **suggested** | **TASER** | 22:2,10,11 |
| **skull** | 30:1 41:15,18 | 45:14 | 20:6 | 24:19,23 26:4 |
| 31:11,13 32:1 | **starting** | **suggests** | **tasing** | 27:20 32:22 |
| **slow** | 18:23,25 | 11:23 | 17:22 18:22,24 | 36:6,8 37:7 |
| 29:11 | **state** | **Suite** | 19:9,10,11,12 | 39:1 40:7,9 |
| **soft** | 1:20 4:4 40:24 | 2:8 47:20 49:4 | 19:13,14 21:12 | 42:18 45:8,10 |
| 31:3 | 47:16 48:4 | **superiors** | 22:1 28:22 | 50:15,18 |
| **soon** | **States** | 43:13 | **team** | **times** |
| 44:1 | 1:1 39:24 | **supply** | 44:4 | 5:23,24 14:19 |
| **sorry** | **stationed** | 16:19 | **tell** | 19:15,18,19 |
| 4:13 19:11 | 41:3 | **sure** | 6:20 27:8 32:3 | 24:21 |
| **sort** | **status** | 4:24 15:11,15 | 33:12 | **today** |
| 9:7 | 33:24 34:2,7 | 22:20 24:24 | **terms** | 35:23 36:25 |
| **sounds** | **stolen** | 29:3,7,9 | 35:17 | **told** |
| 22:1 | 33:14,16 | **Surviving** | **testified** | 7:9,10 15:5,7,8 |
| **South** | **stomped** | 1:7 | 4:5 5:21 | 17:9,10 27:12 |
| 2:4 50:2 | 25:5 | **sworn** | **testify** | **total** |
| **sparsely** | **stop** | 4:4 47:9 48:6 | 36:2 48:6 | 40:5 |
| 9:1 | 18:2,8 26:14,15 | **Syracuse** | **testimony** | **touched** |
| **speak** | **stopped** | 2:4 50:2 | 47:6 48:11 | 29:23 |
| 32:10,13,14,19 | 18:23 26:16,17 | **system** | 49:13 | **tough** |
| | | 12:23 | **thank** | 5:4 |

Deposition of:  Joshua Bjork - August 2, 2021
Sherry Poer v. Sheriff Tim Norton, et al.

Page 10

**tours**
40:4
**trained**
21:3
**training**
17:8 23:11
    41:12 42:4
**transcript**
45:12,18 48:11
    49:11,20 50:21
**transports**
38:23
**TRAVIS**
1:10
**treated**
43:5,9,12
**trial**
50:15
**trouble**
27:17
**truck**
12:11 13:5 28:7
**trucks**
44:3
**true**
47:2 48:10
**trust**
45:17
**truth**
4:4 48:6
**try**
12:22,24 13:1
    17:15,21,23
    22:19,20 30:5
    30:7
**trying**
21:11,19,21
    22:5 24:19
    28:11
**Turkey**
40:6
**turned**
32:3,5
**Turner**

1:10 6:22,25 7:3
    7:6,9,11 12:1
    12:15,21 13:8
    14:20,22,25
    15:16 18:3,17
    19:5,20 23:19
    24:8,17,20,25
    25:3,22 26:20
    26:23 27:1
    29:1,5 30:14
    30:16 31:7
    32:21 37:17
    43:18
**Turner's**
11:9,10
**Twice**
36:9
**two**
33:20 40:4,5
**typewritten**
48:10

_____
**U**
**uh-huh**
4:22,23
**Umm**
38:2
**unconscious**
26:22 27:2,4,5,8
    27:9,22 28:11
**underneath**
20:18 21:12,22
    22:6 23:3
    29:18
**understand**
5:10,17,19 6:5
    7:19,20 36:15
    37:13
**understanding**
44:1
**understood**
5:2,15
**United**
1:1 39:24

**Unknown**
9:21,24 19:16
**unsigned**
50:12,13,14,16
**unsure**
7:21
**use**
12:8,11,11,23
**use-of-force**
42:17
**Ute**
39:7

_____
**V**
**vacation**
45:9
**Valorie**
1:18 45:22 48:3
    48:20
**vehicle**
12:24
**verbally**
4:24
**vicinity**
8:13
**video**
15:21,24 16:1
    16:10 17:17
    18:13,21,23
    20:3,4 23:17
    24:1,5,6,24
    25:17 29:20
    30:6,12 47:19
    49:17 50:20
**VIDEOCONF...**
1:4
**videotaped**
25:4
**vs**
1:9 49:6 50:3

_____
**W**
**waistband**
14:7,12 15:12

19:3 28:6,15
**wait**
5:5
**waive**
45:18
**waived**
50:18
**want**
11:21 12:16
    45:17
**war**
34:10 40:10
**wasn't**
14:2 16:13 20:1
    24:16,16 26:4
    26:5 27:14
    29:16 41:20
**watch**
11:21
**watching**
24:16
**way**
12:13 22:25
    25:13 29:7
    43:4,8
**we'll**
30:11 45:21
**we're**
18:7 24:24
**wearing**
16:11
**week**
39:2,3 42:7
**weigh**
22:9
**weighed**
22:11
**weight**
22:16,23 23:1
    25:8 30:20
**weren't**
19:24 24:14
**West**
47:20

**whatsoever**
35:21
**WHEREOF**
48:16
**Whitlock**
32:14
**Withdrawn**
23:14
**witness**
4:14 25:6,7 36:3
    38:6 45:20
    48:6,16 49:13
**wore**
17:11
**work**
30:13 39:2 41:5
    43:17
**working**
39:13
**world**
8:20
**wouldn't**
10:14 23:5 39:1
**wrist**
20:14 21:10
    26:5,8,13
**wrists**
20:12
**writing**
19:25
**wrong**
45:14

_____
**X**
_____
**Y**
_____
**Yeah**
8:18 19:10 37:1
**year**
38:18 40:6
    41:17
**years**
34:19 39:20
    40:1,2,5,12

Deposition of:  Joshua Bjork - August 2, 2021
Sherry Poer v. Sheriff Tim Norton, et al.

Page 11

41:15
**yelling**
13:11 18:3

_____ **Z** _____

**ZIP**
47:16
**zone**
40:8
**Zoom**
5:4

_____ **0** _____

_____ **1** _____

**10:00**
46:2
**100**
47:20
**1001**
2:8 49:4
**10th**
48:17
**11**
49:1
**11:17**
18:2
**11:44**
18:8
**12/10/2023**
48:20
**12:18**
18:24 20:3
**12:21**
23:16
**12:26**
24:1
**14**
40:5
**14143**
47:20
**18th**
35:21 44:3,5
**19-cv-01088(L...**
1:2 49:6

**19-cv-1088(L...**
50:4
**19954017709**
48:21

_____ **2** _____

**2**
1:4,18 49:7 50:5
**2007**
40:13
**2009**
40:13
**2021**
1:4,18 48:17
  49:1,7 50:5
**205**
22:11
**230**
30:18

_____ **3** _____

**3**
30:24
**30**
39:5
**300**
2:8 49:4
**303-256-6345**
2:5
**303-628-3337**
2:9
**35**
49:14

_____ **4** _____

**4**
3:3
**40-hour**
42:4
**4600**
2:4 50:2

_____ **5** _____

**5**
9:25 10:12

_____ **6** _____

**6**
30:24 31:1

_____ **7** _____

**751**
39:7

_____ **8** _____

**80202**
2:8 49:4
**80237**
2:4 50:2
**80401**
47:21

_____ **9** _____

**9:01**
1:17
**9:45**
38:7
**9:50**
38:8